## Southeastern Greyhound Lines v. Taylor et al.

March 2, 1948.

William B. Ardery, Judge.

R. W. Keenon and James Park for appellant.

J. R. Carpenter, Henderson & Henderson, Smith & Leary and Amos Eblen for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Egbert B. Taylor and another, the appellees, were granted a certificate of public convenience and necessity for operation of bus service from Tompkinsville to Louisville with local service along the Tompkinsville-Edmonton-Greensburg segment but with through service only along the Greensburg-Louisville segment.

While four separate interests filed protests with the Director of the Division of Motor Transportation against the granting of this certificate, yet Southeastern Greyhound Lines, the appellant, emerged as the lone

protestant on this appeal, the others having dropped out by the wayside.

After completion of all evidence before the Director and after his decision as indicated, Greyhound took its appeal to Franklin Circuit Court where a decision was again rendered in favor of Taylor and his partner. Greyhound now appeals from that latest adversity.

In sum and substance, Greyhound contends that there was no evidence whatever before the Director showing a *necessity* of any additional through bus service over the Greensburg-Louisville segment of the route in question and that accordingly the granting of the certificate over that segment was arbitrary. The controversy as to the Tompkinsville-Edmonton-Greensburg segment has apparently been completely abandoned at this time.

Greyhound also contends that the Director's decision as rendered should be interpreted by this court to mean that appellee is forbidden to receive any passengers at Greensburg for Louisville, since there was a complete absence of any evidence showing a necessity for the additional Greensburg-Louisville service.

It appears that this record has considerable evidence showing a need for a Louisville bus service out of Tompkinsville and Edmonton, which are county-seat cities in counties entirely without any railroad service. Greyhound itself does not deny the reality of that evidence. But, besides not having railroad service, these two cities have, according to the evidence, only an indirect bus service, part of which is inefficiently rendered. Moreover, the record shows that the Tompkinsville-Edmonton-Greensburg segment of this certificate cannot be operated with financial success unless the Greensburg-Louisville segment contributes to the overall project through receipts of Louisville passenger fares in Greensburg.

While it is true that the evidence shows a presently existing Greensburg-Louisville bus service, yet such evidence also shows that the service is now rendered by two different companies so that passengers must change busses at Elizabethtown. The present Greensburg-Louisville service comes from A. G. L. Bus Line be-

tween Greensburg and Elizabethtown and from Greyhound between Elizabethtown and Louisville. Therefore, this certificate in controversy is directly parallel with Greyhound along a minor part only of the whole route in issue. And along that minor part the appellees are prohibited by the certificate itself from receiving passengers, they being limited to a "closed door" service, as it is expressed in transportation circles, over that part of the route already served by Greyhound. Thus, the possibility of any *direct* competition between appellees and Greyhound has been eliminated by the express terms of the certificate.

The law authorizing issuance of these transportation certificates must be construed in the interest of the traveling public rather than in the interest of the operators of bus lines. Consolidated Coach Corporation v. Kentucky River Coach Co., 249 Ky. 65, 60 S. W. 2d 127.

In granting certificates to carriers, the Division of Motor Transportation should be guided only by convenience and necessity of the public, not by consideration of whether certificate holders may make money. Union Transfer & Storage Co. v. Huber & Huber, 265 Ky. 736, 97 S. W. 2d 609.

In determining necessity for additional permit over route already covered by another permit, railroad facilities as well as bus facilities should be considered. Cannonball Transit Co. v. Sparks Bros. Bus Co., 255 Ky. 121, 72 S. W. 2d 1021.

If there is reasonable need apparent for the service under consideration and if another line will not be unduly interfered with and if the highway will not be unduly burdened, then there exists a case of convenience and necessity sufficient to justify the granting of a certificate. Short Way Lines, Inc., v. Black, 298 Ky. 67, 182 S. W. 2d 17.

Where the certificate has been granted by the Director and then upheld by judgment of the circuit court, there will be no reversal by this court unless there has been a clear abuse of discretion in the premises. Hazard-Hyden Bus Co. v. Black, 301 Ky. 426, 192 S. W. 2d 195.

In granting a certificate, a Director often does so

not only on the basis of evidence actually before him but on the additional basis of his familiarity with the territory under consideration. Short Way Lines, Inc., v. Black, supra.

A substantial reasoning as to public convenience may carry with it an implication as to practical necessity in a case of this kind. Short Way Lines, Inc., v. Black, supra.

Thus we see the present trend of the law in these cases. The basic consideration now seems to be that of the public interest. It may be that in earlier days of financial difficulties on the part of struggling transportation companies, the law's trend was somewhat more in the direction of an elimination of competition among the companies. But now public interest stands paramount and supreme. The statute itself does not say that necessity is the sole consideration. There are three or four other considerations, like "effect upon the highways," "safety of the public using the highways," "adequacy of existing services." See KRS 281.070.

And even though necessity were the sole consideration, we believe the word itself would always have to be interpreted in its full relation to all circumstances of an existing situation. Now meat is not a necessity to vegetarians—clothing is not a necessity to nudists—the electric fan is not a necessity to Eskimos—the auto was never a necessity to our forebears. Yet, all these things are generally regarded as common necessities in a practical sense. Attitude or convenience has largely molded the necessity in each instance. Moreover, almost any promotion of general welfare has long been commonly regarded as something of virtual necessity in governmental and juridical circles. Promotion of general welfare was a thing of such recognized necessity that our forefathers placed it among their six purposes which they wrote into the preamble of the Constitution of the United States. And so, it is now proper for us to say that whatever substantially appears to promote the general welfare, such as a direct and convenient bus line from remote communities to the state metropolis, must ordinarily carry some strong persuasion upon us of its practical necessity.

Wherefore, we do not believe that there was an abuse of discretion in the granting of the certificate in controversy. Also, we feel that we must interpret this certificate to mean appellees have legal right to receive Louisville passengers in Greensburg. Accordingly, the judgment is, for the reasons recited, now affirmed.