## ECK MILLER TRANSFER CO., Inc.

v.

## ARMES et al.

Court of Appeals of Kentucky.

Jan. 29, 1954.

As Modified on Denial of Rehearing June 25, 1954.

See also 252 S.W.2d 13.

288

Harry McChesney, Jr., Robert H. Kinker, Robert M. Pearce, Frankfort, for appellant.

J. Jerald Johnston, Frankfort, Stanley B. Mayer, Louisville, George Catlett, Frankfort, for appellees.

CULLEN, Commissioner.

Guy Armes, who holds a certificate authorizing him to act as a common carrier by truck of property between Louisville and Lewisport, Kentucky, over U. S. Highway No. 60, serving all intermediate points, applied to the Department of Motor Transportation for an extension of his route from Lewisport to Owensboro, so as to enable him to render service between Louisville and Owensboro and all intermediate points on U. S. 60. The application was opposed by Eck Miller Transfer Company and by Hayes Freight Lines, both of whom hold certificates authorizing them to provide service between Louisville and Owensboro. However, Eck Miller's certificate does not authorize service of intermediate points on U. S. 60; and, in addition to its protest, Eck Miller applied for authority to render such intermediate service.

The department granted Armes' application and denied Eck Miller's application. Eck Miller alone appealed to the circuit court. The order of the department was set aside by the circuit court, on the theory that the department had no authority to act on the application without first giving notice to all existing carriers that their service was inadequate. On appeal to this Court the judgment of the circuit court was reversed, it being held that notice to existing carriers of the inadequacy of their service is not a prerequisite to the holding of a hearing on an application for a certificate. Department of Motor Transportation v. Eck Miller Transfer Co., Ky., 249 S.W. 2d 802.

Upon the remand of the case following the first appeal to this Court, the circuit court passed upon the sufficiency of the evidence and entered judgment upholding the order of the department. The present appeal is by Eck Miller from that judgment.

The main controversy relates to the rendering of through service from Louisville to Owensboro and vice versa.

■ The controlling statute is KRS 281.630, which requires, as a condition of granting a certificate for common carrier service, a finding "that the existing transportation service is inadequate, and that the proposed service to the extent to be authorized by the certificate is, or will be, required by the present and future public convenience and necessity." While the statute makes no mention of "facilities," as did a former statute, we believe that the questions of inadequacy of existing service, and of convenience and necessity for an additional service system, necessarily require a consideration of the adequacy of the facilities of the existing carriers. The questions involve not only the *quality* of the existing service, but the *ability* of the existing carriers to render the service required. Concerning this point, we have said that if existing carriers have adequate facilities to render the needed service, there must be some proof of their inability to render the service before a certificate may be granted for a completely new service system. Whittaker v. Southeastern Greyhound Lines, 314 Ky. 131, 234 S.W.2d 174.

■ In Kentucky Utilities Company v. Public Service Commission, Ky., 252 S.W. 2d 885, 890, in considering the question of convenience and necessity as applied to an electric power utility, we said:

"We think it is obvious that the establishment of convenience and necessity for a new service system or a new service facility requires first a showing of a substantial inadequacy of existing service, involving a consumer market sufficiently large to make it economically 'feasible' for the new system or facility to be constructed and operated.

"Second, the inadequacy must be due either to a substantial deficiency of service facilities, beyond what could be supplied by normal improvements in the ordinary course of business; or to indifference, poor management or disregard of the rights of consumers, persisting over such a period of time as to establish an inability or unwillingness to render adequate service."

We are not aware of any reason why the above principles should not be applicable to motor carrier utilities.

■ Applying to the instant case the principles laid down in the Kentucky Utilities Company case, we find that there is no question raised as to the sufficiency of size of the consumer market, nor is there any evidence that Eck Miller does not have adequate facilities. In fact there is uncontradicted evidence that Eck Miller has idle equipment on hand sufficient to handle 100,000 lbs. more freight per day from Louisville to Owensboro, and 200,000 lbs. more freight per day from Owensboro to Louisville, than its current volume of business. Therefore, the only question concerns whether there has been a showing of indifference, poor management or disregard of the rights of consumers, persisting over such a period of time as to establish an inability or unwillingness to render adequate service. We will consider the evidence as it relates to this question.

Armes offered ten "public" witnesses on the question of inadequacy of the Louisville-Owensboro service. The testimony was addressed in the main to the failure of Eck Miller to make pickups on the same day on which the request for service was made. However, the ten witnesses together were able to specify only three or four instances of delayed pickups. A good deal of their testimony consisted of generalizations based on hearsay. One witness spoke of "slow service" in the past,

but said that his firm had not used Eck Miller's service for the past year and a half. Another witness mentioned one instance in which a rural consignee had not been notified of the arrival of a shipment in Owensboro. Another witness said that "generally" Eck Miller's service was adequate. Another witness said that Eck Miller's service "has been very poor from the standpoint of pickup and our deliveries," but he was able to identify only one instance of a delayed shipment in the past two years, and he said that ordinarily his company delivered their goods to the Eck Miller dock for shipment, without asking for pickup service. Another witness spoke in very general terms of "bad service," but his presumed authority to speak on behalf of several shippers was repudiated and the examiner disregarded his testimony. Another witness said that service "has been very slow," but he was able to specify only one instance of a slow shipment. He also spoke of damaged shipments, but admitted on cross-examination that there had been only a few cases of damaged shipments in the past ten years. Another witness said that service between Louisville and Owensboro has been "very unsatisfactory," but it appears that he was primarily concerned with service to the intermediate points, because he said, "Well, on shipments direct from Owensboro to Louisville isn't as bad as where we try to make shipments *between* Owensboro and Louisville, that is where our trouble seems to be." He was unable to give a single instance of slow service from Louisville to Owensboro in the past year. Another witness complained of failure of Eck Miller to unload promptly goods delivered to Eck Miller's dock by the witness' company in "roll-off" bodies, but this witness said that since Eck Miller has had a new terminal manager in Louisville there has been no cause for complaint as to Eck Miller's service. Another witness said that two of his company's customers had requested that shipments to them not be sent by Eck Miller. He said, "It seems as though some pickups as I understand it wouldn't go out the same day, be some delay in pickups".

The final witness said only that from what he heard from shippers and shipping clerks in Louisville concerning Eck Miller's service he "got the impression they must be slow."

It is our opinion that the foregoing evidence did not contain anything of substance sufficient to support a finding that the existing carriers, and particularly Eck Miller, had been rendering a poor quality of service over such a period of time as to establish inability or unwillingness to render adequate service. As a matter of fact, there was no clear-cut finding by the Department of Motor Transportation that the existing Louisville-Owensboro service is inadequate. The key paragraph of the "Recommended Report and Order" of the Examiner for the Department, which was adopted in toto by the Commissioner, is as follows:

"Guy Armes has introduced witnesses that testified for the need of additional service both between Louisville and Owensboro, and from Owensboro to the intermediate points on Highway 60. All the evidence of Eck Miller has been of Owensboro shippers whereas Armes submitted evidence of a need from both Owensboro and Louisville. The Examiner feels that the small operators serving the intermediate points should be considered *and that any freight handled by Armes between Louisville and Owensboro will not materially affect Miller or the other operators.* That the intrastate traffic between these points should be handled by an intrastate operator, and not by interstate operators. Guy Armes has shown that he is financially able to render the needed service, and is fit, willing and able to perform the service. That public convenience and necessity has been shown to exist in the intrastate operation applied for by Armes. * * *" (Our emphasis)

It is obvious from the above finding that the Department was concerned primarily with the service of the intermediate

points, and felt that to permit Armes to render through service, as an incident of extending his certificate from Lewisport into Owensboro, was a matter of no great significance. Certainly, the statement in the finding that Armes' Louisville-Owensboro service would "not materially affect" the existing operators is inconsistent with a finding of public convenience and necessity for an additional service system. The finding is consistent, however, with our interpretation of the evidence, which is that there were only casual, isolated instances of poor service, with no real showing of any substantial inadequacy of service.

It is our opinion that the court erred in sustaining so much of the Department's order as granted a certificate to Armes for Louisville-Owensboro service.

As concerns the question of service from Louisville to all intermediate points east of Owensboro, and from Owensboro to all intermediate points west of Louisville, we think the evidence supports the action of the department in granting Armes the right to render this service, and in denying a certificate to Eck Miller. Armes has been rendering service from Louisville to the intermediate points, and between the intermediate points themselves, and its experience and the nature of its past operations best qualify it to render the additional service.

The judgment of the circuit court is affirmed to the extent that it approves the granting of a certificate to Armes for service of the intermediate points, and the denial of such a certificate to Eck Miller. To the extent that it approves the granting of a certificate to Armes to render Louisville-Owensboro service the judgment is reversed, with directions to enter a judgment setting aside so much of the order of the Department of Motor Transportation as granted such a certificate.