**RED ARROW DELIVERY, INC., et al., Appellants,**

v.

**GREYHOUND CORPORATION et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 21, 1964.

Rehearing Denied May 1, 1964.

Robert M. Pearce, Louis J. Amato, Dept. of Motor Transportation, Frankfort, for appellants.

John Hopkins, Frankfort, Lively Wilson, Louisville, Fred Bradley, Frankfort, for appellees.

CULLEN, Commissioner.

Over the protests of the Greyhound Corporation, the Railway Express Agency, and several common carrier truck lines, the Department of Motor Transportation granted a regular route common carrier truck certificate to Red Arrow Delivery for operations over 25 routes covering substantially all of the inter-city highways within a 50-mile radius of Lexington, with authority to serve off-route points within three miles of the designated routes. The certificate, designed to authorize a parcel delivery service in the Lexington trading area, was

restricted to the handling of items of freight weighing 50 pounds or less and not exceeding 108 inches in length and girth combined, each item being considered as a separate shipment for rate application purposes.

Upon appeal to the circuit court by the protesting carriers, judgment was entered setting aside the order of the department, on the ground that the certificate in practical effect authorized transportation of general commodities over *irregular routes,* which type of operation is not permitted under the Kentucky Motor Carrier Law. Red Arrow has appealed from that judgment.

In general, KRS 281.011 restricts the issuance of common carrier certificates to persons who engage in transportation "over regular routes". Certificates for *irregular route* operations may be issued only to (1) persons holding irregular route common carrier authority granted by the Interstate Commerce Commission, (2) taxicabs, (3) local cartage vehicles, and (4) persons transporting exempted commodities. Thus, a certificate may not be issued for intrastate transportation of general commodities over irregular routes outside of a local cartage area (within a city and its commercial area).

Admittedly, each of the 25 routes covered by the certificate granted to Red Arrow is a "regular route" from the standpoint of geography, in that it has a fixed course and fixed termini. However, it is the contention of the appellees that "regular route" as used in the statute contemplates *regularity of operations* over the route as well as a fixed course and fixed termini. The question therefore is: Does "regular route" embrace only *where* the carrier will go or does it further embrace *how* and *when* he goes?

Red Arrow proposes to operate a parcel delivery service between the various points on the designated routes, which will be a daily service in the sense that any day there

is a parcel to be delivered to a point on a route a truck will operate over that route. However, trucks will not operate every day on every route, nor will the trucks follow a set pattern or direction in traveling the routes.

■ In our opinion, the significant feature of regular route service is that the carrier holds out to the public that he will transport between fixed points, promptly, such goods as are tendered to him for transportation. Whether he has a fixed *schedule* for either time or direction of travel over each route does not seem to us to be a controlling factor.

■ The fact that the Red Arrow certificate covers 25 routes, which in practicality permits operations to almost every point in the Lexington trading area, does not require the conclusion that an irregular route operation has been authorized. We do not conceive how the adding together of 25 separate regular routes changes their character as regular routes.

We have considered the tests for distinguishing between regular route and irregular route operations as laid down by the Interstate Commerce Commission in Transportation Activities of Brady Transfer & Storage Company, 47 M.C.C. 23. We believe that the operations of Red Arrow reasonably may be classed as regular route operations under those tests.

The appellees point to the fact that the Interstate Commerce Commission issues *irregular* route certificates for parcel delivery services, and they argue that this shows that the Commission considers such operations to belong in the irregular route category. However, the Interstate Commerce Commission has authority to issue either regular route or irregular route certificates, so the fact that the parcel delivery services have obtained irregular route certificates may be considered to indicate nothing more than that the carriers preferred to have that kind of certificate.

■ The Department of Motor Transportation has broad authority to regulate the motor carrier industry. The courts should not narrow that authority by unduly strict interpretation of the governing statutes. The issuance by the department of a particular kind of certificate should not be held to be beyond the statutory power of the department unless the limit on the power is clear and plain. Here, we cannot find in the words "over regular routes," contained in KRS 281.011, a clear and positive meaning that schedules as well as courses and termini must be regular.

It is our conclusion that the circuit court erred in holding that the Department of Motor Transportation did not have statutory power to issue the certificate to Red Arrow.

■ On the appeal to the circuit court the contention was made that the evidence did not support the findings of the Department of Motor Transportation that the existing service was inadequate and that the proposed service was required by public convenience and necessity. The circuit court did not pass on that question. To expedite the disposition of this case we shall treat the question as properly before us for review.

■ We shall consider first the matter of inadequacy of existing service, keeping in mind that three different kinds of protesting carriers are involved. As concerns the regular truck operators, the Department of Motor Transportation found that not only do they not render a parcel delivery type of service but they have in effect established an embargo against small package shipments by establishing minimum rates that are economically prohibitive of small shipments. The evidence supports that finding.

As concerns Railway Express Agency, the department found that it also has high minimum rates designed to discourage small shipments; that its service operates primarily in conjunction with or coordi-

nated with rail service; and that its pickup and delivery service is limited. The evidence supports those findings.

As concerns Greyhound Corporation, the department found that it has no pickup and delivery service; that it primarily is a carrier of passengers and its carriage of property is limited to express shipments of an emergency nature; and that it is not in a position to afford a general commodity service. The evidence supports those findings.

There is ample basis then for a holding that the existing service is inadequate, because in reality the kind of service proposed is not being rendered at all, and for a holding that the inadequacy is due to such causes and has persisted for such period of time as to establish unwillingness of the existing carriers to render the service. See Eck Miller Transfer Co. v. Armes, Ky., 269 S.W.2d 287.

■ This brings us to the matter of convenience and necessity. The proposal is for a specialized type of service not now being provided by other carriers. The appellees maintain that the proposed service is in the nature of a frill; that at the most it could be considered a matter of mere convenience and in no sense a necessity. However, the Department of Motor Transportation found that the service would fill a distinct need, and that it would introduce a desirable improvement and augmentation in the transportation field. The findings have support in the testimony of a number of shippers concerning the usefulness of such a service to them.

It is true that there was not evidence showing a specific need for service to or from every point on the 25 routes. However, in our opinion the real issue concerned the necessity for the *kind* of service in the *area* and there was no necessity to show a specific need at each individual point. The situation here, involving a new type of service, differs from the ordinary situation where the question is whether par-

ticular places need more service of the same type they have been receiving.

It is our conclusion that the evidence sustains the finding of inadequacy of existing service and the finding of convenience and necessity.

■ The contention is made by the appellees that there was insufficient proof to sustain the finding that the proposed operation would be economically feasible. There was evidence that Red Arrow has successfully operated a local parcel delivery service in the Lexington area for a substantial period of years, and that operations similar to those proposed have been carried on profitably in many other states. We think this was sufficient.

The judgment is reversed with directions to enter judgment upholding the order of the Department of Motor Transportation.