**GOGGIN TRUCK LINE, INC., Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. A. No. 4623.

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 27, 1967.

Robert H. Cowan, Gracey, Buck, Maddin & Cowan, Nashville, Tenn., for plaintiff.

Gilbert Merritt, Jr., U. S. Atty., Nashville, Tenn., John H. D. Wigger, U. S. Dept. of Justice, Washington, D. C., for defendant United States.

Manny H. Smith, Steven Kazan, Interstate Commerce Commission, Washington, D. C., for defendant I. C. C.

Eugene W. Ward, Gen. Counsel, Tennessee Public Service Commission, Nashville, Tenn., for intervening petitioner Dept. Tenn. Public Serv. Comm.

Walter Harwood, Nashville, Tenn., James L. Bomar, Jr., Shelbyville, Tenn., for intervening defendant Shelbyville Express, Inc.

Before PHILLIPS, Circuit Judge, MILLER, Chief District Judge, and GRAY, District Judge.

PHILLIPS, Circuit Judge.

This is an action to enjoin, annul and set aside an order of the Interstate Commerce Commission (ICC) granting a certificate of registration to Shelbyville Express, Inc., intervening defendant.

Shelbyville Express operates between Nashville, Tennessee, and Shelbyville, Tennessee, a distance of fifty-two miles. On December 1, 1965, it filed an application with the Tennessee Public Service Commission seeking an intrastate certificate of public convenience and necessity to operate as a motor carrier of general commodities, with the usual exceptions, between these two Tennessee cities and to serve all intermediate points. With its application Shelbyville Express gave notice that, in addition to its intrastate operations, it proposed to handle interstate and foreign commerce. Notice of the filing of its application was published in the Federal Register.

Plaintiff (Goggin) was one of the protestants before the State Commission and ICC and is a common motor carrier operating in interstate commerce between Nashville and Shelbyville under a certificate of registration issued by the ICC.

Following the procedure set forth in 49 U.S.C. § 306(a)(6), the State Commission on March 10, 1966, found that

applicant should be authorized to engage in operations in interstate commerce within limits which do not exceed the scope of the intrastate operations which were authorized in the same order and by Tennessee Certificate No. 2375.

On November 8, 1966, the ICC affirmed the action of the State Commission, denied petitions for reconsideration filed by protestants, and ordered that a certificate of registration issue to Shelbyville Express for the interstate authority sought in its application, co-extensive with the intrastate authority granted by the Tennessee Commission. On January 10, 1967, the ICC issued the certificate of registration in its Docket No. MC-121598. In granting the certificate of registration the ICC said:

"That (1) in its order of March 10, 1966, the Tennessee Public Service Commission found that public convenience and necessity require the operations described in Tennessee Certificate No. 2375, in intrastate commerce, and at the same time found that the present and future public convenience and necessity require corresponding operations by applicant in interstate and foreign commerce; (2) the procedures followed in reaching such conclusions and findings are in accordance with the requirements of Section 206(a) (6) of the act, as amended, John E. Dugan—Certificate of Registration, 99 M.C.C. 557; and (3) petitioners have failed to set forth material facts or arguments of substance which were not considered by the Tennessee Public Service Commission;

"Wherefore, upon consideration of the record in the above-numbered proceeding, of the petitions for reconsid-

eration and the reply thereto, and good cause appearing therefor:

"*We find,* That the evidence considered in the light of the petitions and the reply does not warrant a result different from that reached by the Tennessee Public Service Commission; and that the statement of facts, the conclusions, and the findings of the State Commission, with respect to the authorization of operations in interstate and foreign commerce, being proper and correct in all material respects, should be, and they are hereby, affirmed; therefor,

"*It is ordered,* That the said petitions, to the extent that they seek a result different from that reached by the Tennessee Public Service Commission be, and they are hereby, denied."

The question presented in this proceeding is whether substantial evidence supported the grant of interstate motor carrier authority to Shelbyville Express by the Tennessee Commission and, in turn, the order of the ICC affirming this grant.

The certificate in the present case was granted pursuant to the 1962 amendment to the Interstate Commerce Act, Public Law 87-805, 76 Stat. 911, enacted October 15, 1962, 49 U.S.C. § 306(a)(6). This amendment established a new procedure whereby a common carrier operating within a single state may obtain, upon a proper showing, a certificate of registration authorizing corresponding interstate operations.[1]

Public Law 87-805, as enacted on October 15, 1962, added Section 206(a)(6) to the Act. (49 U.S.C. § 306(a) (6)). This amendment provides that no certificate of public convenience and necessity

1. Prior to the 1962 amendment a proviso in the Motor Carrier Act of 1935 permitted a carrier engaged in operations solely within one state to obtain interstate authority without separate action by the ICC. Based upon a finding by a State commission that its service in *intrastate* commerce was required by the public convenience and necessity, the carrier could conduct coextensive operations in interstate and foreign commerce merely by filing with the ICC a statement of intent to engage in such operations. Thus, prior to 1962, interstate authority could be obtained in such a situation without any determination of whether it was required by the public convenience and necessity.

from the ICC shall be required for the conduct of activities in interstate or foreign commerce by a motor carrier operating solely within a single State, and not controlled by, controlling, or under a common control with a carrier engaged in operations outside the State, provided that the carrier has obtained from the appropriate State regulatory body a certificate of public convenience and necessity authorizing operations in intrastate commerce, and containing certain required recitations. To entitle the carrier to a certificate of registration from the ICC under the 1962 amendment, the State certificate must recite that:

"* * * it was issued after notice to interested persons through publication in the Federal Register of the filing of the application and of the desire of the applicant also to engage in transportation in interstate and foreign commerce within the limits of the intrastate authority granted, that reasonable opportunity was afforded interested persons to be heard, that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intrastate operations authorized to be conducted."

The opinion of the Tennessee Commission contains a recitation conforming to this statutory provision.

The purpose and effect of the 1962 amendment were outlined by the ICC in John E. Dugan Extension—Certificate of Registration, 99 M.C.C. 557 (1965) as follows:

"The major change effected by the 1962 amendments is the restriction of future entrance into the field of for-hire interstate common carrier transportation to those persons who are able to demonstrate that the activities in which they propose to engage are required by the public convenience and

necessity. Thus, Representative Williams, during the House debates on January 31, 1962, stated that the 'entry of motor carriers into interstate transportation should be based on affirmative findings by a regulatory board or commission that a public need exists for such interstate services' (108 Cong. Rec. 1361). In the case of a single-State motor carrier desirous of availing itself of the advantages of the section 206(a)(6) procedures, the initial determination of this issue shall be made by the State commission, and such determination is reviewable by this Commission upon petition of any party in interest who opposed the interstate aspect of the application in the State proceeding. Such review shall be based upon the record made before the State commission."

All parties to the present proceeding agree that the ICC in *Dugan*, supra, correctly outlined the procedure to be followed in implementing the 1962 amendment, as follows:

"In disposing of the instant application and petition, it is necessary that we make an initial determination as to the manner in which section 206 (a)(6) and the applicable special rules are to be implemented. First of all, this Commission's review, as previously emphasized, must be based entirely on the record made before the State commission. The State commission's findings, although not binding on this Commission, are thus to be entitled to great weight; and, in our opinion, they may be modified or reversed only when found to be not consistent with those public convenience and necessity standards normally applied under the remaining provisions of the Interstate Commerce Act. The legislative history of section 206(a)(6) and the expressed national transportation policy of cooperation between the Federal and State regulatory systems precludes, we think, the substitution of our judgment for that of a duly authorized State commission where the latter's decision under section 206(a)(6) is based upon

substantial evidence and conforms in all respects to the requirements of the Interstate Commerce Act.

"Section 206(a)(6) itself provides but a single standard by which to determine whether an application filed under that section should be granted or denied; i. e., whether the public convenience and necessity require the considered service. And as we noted earlier in this report, the cardinal purpose of the 1962 amendments was to make single-State operators in interstate and foreign commerce subject to a combined Federal-State licensing process, under which such operators would be required to show that the interstate aspects of their proposed activities meet a public need. * * * " Dugan, supra, 99 M.C.C. at 566–567.

■ We agree with the ICC that the questions to be determined are whether the new operation or service will serve a useful public purpose, responsive to the public demand or need; whether this purpose can and will be served as well by existing carriers; and whether it can be served by applicant without endangering or impairing the operations of existing carriers contrary to the public interest.

Goggin contends that there was no substantial evidence to support the findings of the State Commission with respect to interstate commerce. The issue before this Court is not whether the ICC has construed correctly the 1962 amendment, since all parties agree that the construction of that statute by the Commission in Dugan is correct. The sole question is whether the record contains substantial evidence to support the findings with reference to interstate commerce.

■■ It is well established that an order of the ICC when issued within the scope of the Commission's statutory authority will not be modified or disturbed by a court on review, if based upon adequate findings which are supported by substantial evidence upon the record as a whole. United States v. Pierce

Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821; Rochester Telephone Corp. v. United States, 307 U.S. 125, 138–140, 59 S.Ct. 754, 83 L.Ed. 1147. The courts have recognized that Congress has delegated to the Commission a broad discretion in determining what constitutes the public convenience and necessity under 49 U.S.C. § 307(a). Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051. The same standards apply to proceedings under the 1962 amendment. 49 U.S.C. § 306(a)(6).

The Tennessee Public Service Commission devoted some thirty pages of its order to a thorough summary and analysis of the evidence presented, and held:

"[T]hat (1) all interested persons were given notice by publication in the Federal Register and by the Commission's own notice of the filing of this application, and that (2) a reasonable opportunity was afforded interested persons to be heard. (3) The Commission has duly considered the question of the proposed interstate and foreign operations as well as the intrastate operations and (4) finds that the public convenience and necessity require that this carrier also be authorized to engage in interstate operations within the limits which do not exceed the scope of the intrastate operations and all the requirements of Section 206(a) (6) of the Interstate Commerce Act as amended October 15, 1962."

Without lengthening this opinion by a summary of all the evidence concerning the need for interstate services and the inadequacy of existing service, suffice it to say that witnesses representing manufacturers and other businesses at Shelbyville, Tennessee, who ship and receive goods in interstate commerce primarily via the Nashville gateway, testified as to the need for more prompt service connecting with interlining motor carriers as well as air freight service at the Nashville airport. We find substantial evidence in the record to support the holding that the proposed interstate

service of Shelbyville Express will serve a useful purpose responsive to a public need; that this service would not be served as well by Goggin or other existing carriers; and that Shelbyville Express can provide the needed service without endangering Goggin or other existing carriers contrary to the public interest.

 Accordingly the Court holds that the findings of the State Commission as approved by the ICC are supported by substantial evidence on the record as a whole, and that the order of the Commission is valid.

Goggin relies heavily upon Dixie Highway Express Inc. v. United States, 268 F.Supp. 239 (S.D.Miss.). We find this case to be distinguishable on its facts. In its former opinion in the same case, 242 F.Supp. 1016, the Court held that the order of the ICC was not "supported by the record" and remanded the case to the Commission for "reexamination and study and further action thereon not inconsistent with the opinion of the Court herein." 242 F.Supp. at 1021. The second opinion of the Court, 268 F.Supp. 239, held to the same effect after the Commission had reaffirmed its previous decision upon the prior record without hearing any new evidence. In the present case we hold that there is substantial evidence supporting the order of the Commission.

Further, we respectfully disagree with the following holding in Dixie Highway Express v. United States: [2]

"The invariable rule of the Commission is and has been for a long time that no certificate affecting the area of another carrier will be issued until that other carrier has been furnished an opportunity either to improve or correct his service to such route or decide whether he wishes to or can furnish the added service sought by the applicant carrier." 268 F.Supp. at 241.

An order will be entered affirming the order of the Interstate Commerce Commission.

WILLIAM E. MILLER and FRANK GRAY, Jr., JJ., concur.

2. Editor's note: On December 19, 1967 the Supreme Court reversed the District Court in Cases Nos. 694 and 707, United States v. Dixie Highway Express, 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639, saying:

"The District Court erred in holding that it is the 'unvariable rule' of the Commission to grant existing carriers an opportunity to remedy deficiencies in service, and in holding that carriers have a property right to such opportunity before a new certificate may be issued upon a lawful finding of public convenience and necessity pursuant to the statute. The Commission's power is not so circumscribed. No such limitation has been established by the Commission's own decisions or by judicial determinations. It is, of course, true that the Commission should consider the public interest in maintaining the health and stability of existing carriers, see United States v. Drum, 368 U.S. 370, 374, 82 S.Ct. 408, 410, 7 L.Ed.2d 360 (1962); but it is also true that, upon the basis of appropriate findings, 'the Commission may authorize the certificate even though the existing carriers might arrange to furnish successfully the projected service.' ICC v. Parker, 326 U.S. 60, 70, 65 S.Ct. 1490, 1495, 89 L.Ed. 2051 (1945); see Schaffer Transportation Company v. United States, 355 U.S. 83, 90–91, 78 S.Ct. 173, 177, 178, 2 L.Ed.2d 117 (1957)."