**RAY PRICE, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**JACOBSEN TRANSFER, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**KRUSE TRANSPORTATION COMPANY, Inc., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**MERRILL O. STEWART, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. Nos. 1389L, 1388L, 1390L and 1342L.

United States District Court
D. Nebraska.

March 11, 1969.

Charles J. Kimball, Nelson, Harding, Leonard & Tate, Lincoln, Neb., for plaintiff.

Arthur J. Cerra, I. C. C., Washington, D. C., for defendant.

Before LAY, Circuit Judge, ROBINSON, Chief District Judge, and VAN PELT, District Judge.

LAY, Circuit Judge.

This action is brought by four motor carriers, Merrill O. Stewart, Inc., Kruse Transportation Company, Inc., Jacobsen Transfer Inc. and Ray Price, Inc., which hold intrastate certificates to operate in

Nebraska. They seek review of denials by the Interstate Commerce Commission of certificates of registration authorizing operations in interstate or foreign commerce as common carriers by motor vehicle between certain described points in Nebraska, including some points over irregular routes. Each of the above named motor carriers had applied to the Nebraska State Railway Commission for approval of transfer of intrastate certificates from third parties. Simultaneously, each of the carriers sought from the state commission concurrent authority for operations in interstate or foreign commerce pursuant to § 206(a) (6) [49 U.S.C. § 306(a) (6)]. In each instance the Nebraska Railway Commission approved the transfer and found a corresponding need for operations in interstate and foreign commerce.

The Interstate Commerce Commission in each case refused the granting of a certificate for interstate rights because of noncompliance with § 206(a) (6) of the Interstate Commerce Act, Part II. Each applicant has brought suit against the Commission to review its holding.

Since the cases present different historical facts, we will discuss them in light of the *Stewart* application and then relate our holding to the other applicants.

Stewart's application for interstate rights was unopposed; Operating Rights Board No. 2 denied this application by order entered February 18, 1964, on the ground that § 206(a) (6) does not cover a situation where an applicant acquires a certificate of public convenience and necessity for intrastate commerce "by transfer." Upon appeal, decided April 1, 1966, Division 1, acting as an Appellate Division, affirmed the denial but for a different reason. Their denial rested upon the fact that the state commission had not made a simultaneous finding of public convenience and necessity as to

intrastate authority[1] as required by § 206(a) (6). It stated:

"[T]he fact that the initial intrastate authority may have been granted at a previous time is irrelevant to the purpose of the notice requirements. Simply put, this aim is to give public notice ·that the single-State operator *at the present time* is also seeking interstate authority within the scope of its intrastate operations so that all 'interested persons' may have 'reasonable opportunity' to be heard, before the State body considers the proposed interstate and foreign operations." 102 M.C.C. 1.

Subsequently, *Stewart* (as did *Kruse*) submitted a new application which recited an April 27, 1966, nunc pro tunc order of the Nebraska Commission, correcting their earlier 1963 authorization by setting forth a finding of public convenience and necessity for intrastate operations. Thereafter, in consolidation with consideration of Edward T. Molitor Extension, 105 M.C.C. 790, the Commission reviewed the appellate division holding in *Stewart* and again denied the interstate certificate for additional reasons of noncompliance under § 206(a) (6).

The Commission holding may be summarized as follows: (1) section 206(a) (6) requires an *initial* proceeding where public convenience and necessity issues are actually tried and a "refinding" in a state transfer proceeding is not sufficient; (2) the statute requires a concurrent finding that public convenience and necessity require both intrastate and interstate motor vehicle operations; (3) the purpose of the proceeding before the Nebraska Commission was to prove public convenience and necessity only as to interstate operation since it was not otherwise relevant to a state transfer proceeding; (4) a nunc pro tunc order was not sufficient to supply a belated finding of public convenience and necessity for intrastate

---

1. Under Nebraska law, in a "transfer" proceeding, the statute does not require a finding of public convenience and necessity for approval· of the transfer of an existing certificate. Only "public interest" need be shown, not "necessity." Neb.Rev.Stat. § 75–240.03 (Supp.1953).

operation; and (5) the notice to the public was deficient in that it did not inform the public that a certificate for public convenience and necessity was being sought for intrastate use. Five members of the Commission disagreed with the requirement that only an "initial" state proceeding can qualify under § 206(a) (6). These five members would hold that a state commission may make a "refinding" of public convenience and necessity for intrastate operation even though it previously had issued the intrastate certificate.

The significant language of § 206(a) (6) reads as follows:

"(6) On and after October 15, 1962 no certificate of public convenience and necessity under this part shall be required for operations in interstate or foreign commerce by a common carrier by motor vehicle operating solely within a single State and not controlled by, controlling, or under a common control with any carrier engaged in operations outside such State, if such carrier has obtained from the commission of such State authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce and such certificate recites that it was issued after notice to interested persons through publication in the Federal Register of the filing of the application and of the desire of the applicant also to engage in transportation in interstate and foreign commerce within the limits of the intrastate authority granted, that reasonable opportunity was afforded interested persons to be heard, that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intra-

state operations authorized to be conducted. * * * "

The legislative history of § 206(a) (6) has been exhaustively discussed both by the Commission and the courts. See Goggin Truck Line, Inc. v. United States, 276 F.Supp. 884 (M.D.Tenn.1967); Navajo Freight Lines, Inc. v. United States, 263 F.Supp. 438 (C.D.Cal.1967); Valley Express, Inc. v. United States, 264 F.Supp. 1006 (W.D.Wis.1966). See John E. Dugan Extension-Certificate of Reg., 99 M.C.C. 557, 559 (1965). See also S. Rep. No. 528 and H.Rep. No. 1090, 87th Cong., 2d Sess., U. S. Code Cong. & Admin. News 1962, p. 3165. No useful purpose would be served in repeating these analyses. It is self-evident that the amendatory proviso, made in 1962, was designed to prevent certain abuses. The primary concern was that under the former statute the Commission had no control over the granting of certificates for interstate operation to a holder of an intrastate certificate. The authorization was automatically given simply upon application to the Commission by the holder of an intrastate certificate. Neither the state commission nor the I.C.C. was required to find any existing "need" for the granting of an interstate certificate. This resulted in the abuse of duplication of certificates. Congressman (now Judge) Harris stated:

"Let me illustrate the situation by giving an example. Let us take a motor carrier with interstate operating authority between New Haven, Conn., and Little Rock, Ark. This carrier would like to have a larger gathering area around New Haven. He finds that he cannot prove to the satisfaction of the ICC a need for enlarging his gathering area, because there are other interstate motor carriers now adequately serving the surrounding territory. So he induces his brother, or uncle to buy an intrastate certificate to operate in Connecticut. The brother or uncle then registers this certificate with the ICC, and obtains the right to handle interstate shipments within the State of Connecticut covering not only the

City of New Haven, but perhaps the entire State of Connecticut. Thus, the two individuals, working together in this manner, can create what is tantamount to a new interstate service without ever having to prove the need for the enlarged service before the ICC." 108 C.R. 1358.

The California district court in discussing the history of these same amendments observed that Congressman Harris' statement illustrates that "the major concern *was not with the degree of proof* necessary before the Commission, but rather with the fact that much was being done *without any approval* of any sort." Navajo Freight Lines, Inc. v. United States, 263 F.Supp. 438, 445 (C.D.Cal. 1967).

In the *Molitor* decision, 105 M.C.C. at 799, Commissioner Brown, dissenting in part, observed:

"Section 206(a) (6) of the act does not speak in terms of an 'initial,' or an 'additional' grant of authority. It requires only that, upon proper notice, the State commission make a valid concurrent finding that public convenience and necessity require both the interstate and intrastate operations in question. The legislative history makes it clear that the type of State proceeding is of no great importance and that it is irrelevant whether the corresponding intrastate authority is original or was granted 5 or 10 years previously; so long as interested persons were given an opportunity to be heard with respect to both the intrastate and interstate issues involved."

Commissioner Walworth, with whom Chairman Tucker and Commissioners Tuggle and Bash concurred, observed:

"In my view the requirements of section 206(a) (6) are fully satisfied when (1) interested persons have been accorded a reasonable opportunity to be heard with respect to both the intrastate and interstate aspects of an application filed thereunder and (2) the State commission has considered both questions and finds, on a record adequate to sustain such findings, that the public convenience and necessity require the continuation of or initiation of applicant's intrastate operations and the initiation of its proposed interstate motor carrier service." 105 M.C.C. at 799.

We agree with the views of these Commissioners. The legislative history outlines the necessary steps under § 206(a) (6):

"(1) such carrier has obtained from the State Commission a certificate of public convenience and necessity authorizing intrastate operations, (2) such certificate was issued after notice to interested persons through publication in the Federal Register of the filing of the application and of the desire of the applicant also to engage in interstate and foreign commerce within the limits of the intrastate authority granted, (3) reasonable opportunity was afforded interested parties to be heard, and (4) the State commission has considered the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier be authorized to engage in intrastate operations and also to engage in interstate and foreign operations within the limits of the intrastate authority." U.S. Code Cong. & Admin. News, 87th Cong., 2d Sess., p. 3166 (1962).

█ The statute simply requires that a state commission "has duly considered and has found." It does not specify the kind of proof or the type of hearing that a state commission must follow. Plain wording deserves plain meaning. As Judge Matthes has recently observed, "common words are to be taken in their ordinary significance in the absence of an indication of a contrary intent." Community Blood Bank of Kansas City Area, Inc. v. Federal Trade Comm., 405 F.2d 1011 (8 Cir. 1969). And he added:

"[T]he general rule of statutory construction requires the courts to ascertain the intent of legislation from the language used. The legislative will

must be ascertained from the statute if it is clear and plain and the whole act is internally cohesive. In 62 Cases, etc., of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951), the Court was prompted to state:

"'But our problem is to construe what Congress has written. After all, Congress expresses its purposes by words. It is for us to ascertain— neither to add nor to subtract, neither to delete nor to distort.'"

■ We find nothing in the legislative history or the Act itself which requires an *initial* application to a state commission before the applicant can qualify under § 206(a) (6) for an inter*state* certificate. Nor do we agree that this interpretation will bring about abuse. Protective safeguards to the public are found in the last sentence of § 206(a) (6) which gives the Commission power to review the grant of authorization by a state commission of operations in inter-state commerce. This reads:

"In ·accordance with such reasonable rules as may be prescribed by the Commission, any party in interest, who or which opposed in the State commission proceeding the authorization of operations in interstate or foreign commerce, may petition the Commission for reconsideration of the decision of the State commission authorizing operations in interstate or foreign commerce, and upon such reconsideration upon the record made before the State commission, the Commission may affirm, reverse, or modify the decision of the State commission, but only with respect to the authorization of operations in interstate and foreign commerce."

The Commission itself has set out these standards for review in John E. Dugan Extension-Certificate of Registration, 99 M.C.C. 557, 566–567 (1965):

"First of all, this Commission's review, as previously emphasized, must be based entirely on the record made before the State commission. The State commission's findings, although not binding on this Commission, are thus to be entitled to great weight; and, in our opinion, they may be modified or reversed only when found to be not consistent with those public convenience and necessity standards normally applied under the remaining provisions of the Interstate Commerce Act. The legislative history of section 206(a) (6) and the expressed national transportation policy of cooperation between the Federal and State regulatory systems precludes, we think, the substitution of our judgment for that of a duly authorized State commission where the latter's decision under section 206(a) (6) is based upon substantial evidence and conforms in all respects to the requirements of the Interstate Commerce Act."

■ Thus, the Commission may review *any* state proceeding and still deny any grant of inter*state* authority not based upon substantial evidence demonstrating public convenience and necessity relating to the grant. Cf. Goggin Truck Line, Inc. v. United States, 276 F.Supp. 884 (M.D.Tenn.1967).

■ We agree with the Commission's construction that the statute requires the state commission to make dual findings of public convenience and necessity as to both intra*state* and inter*state* operations. This is clear from § 206(a) (6) itself which reads in part:

"[T]hat the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intrastate operations authorized to be conducted."

■ However, we are not persuaded by the Commission's argument that under Nebraska law intra*state* public con-

venience and necessity is no longer an issue in a transfer proceeding. See Neb. Rev.Stat. § 75–240.03 (Supp. 1953) and Caudill v. Lysinger, 161 Neb. 235, 72 N.W. 2d 684 (1955). Here the transfer of an intrastate certificate was not the only authorization sought. The applicants were seeking approval as well under § 206(a) (6), which, as the Commission has observed, requires a determination of public convenience and necessity for both intrastate and interstate motor vehicle operation. Therefore, simply to categorize the Nebraska proceedings as one relating solely to "transfer" rights is completely misleading. *More* was being litigated: applicants' rights under § 206 (a) (6). The alleged restricted evidential hearing relating to "transfer" becomes irrelevant. The application and statutory notice make clear that *more* was involved.

 This then brings us to the alleged deficiency in the proceedings affecting both *Kruse* and *Stewart,* in which the entire Commission joined, that is, the holding that a nunc pro tunc refinding of need for an intrastate operation is not sufficient. We think this misconstrues the use of a nunc pro tunc procedure in Nebraska.

 The Nebraska Railway Commission has inherent power to correct its orders by a nunc pro tunc proceeding. See Application of McKeone, 159 Neb. 448, 67 N.W.2d 475, 487 (1954). In North Loup River Public Power & Irrigation Dist. v. Loup River Public Power Dist., 149 Neb. 823, 32 N.W.2d 869, 872 (1948), the Nebraska Supreme Court has said:

" 'It must be borne in mind that the proper function of a nunc pro tunc order is not for the purpose of correcting some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made, so that it will truly record the action really had, but which through some inadvertence or mistake has not been truly recorded. In other words, it is an order to make the record speak the truth.' "

The nunc pro tunc order entered by the Nebraska Railway Commission reads as follows:

"On this 27th day of April, 1966, the Commission considered the case of MERRILL O. STEWART, INC., APPLICATION FOR CERTIFICATE OF REGISTRATION UNDER SECTION 206(a) (6), 102 M.C.C. 1, 1966, and the request of Merrill O. Stewart, Inc. Lincoln, Nebraska, for an order nunc pro tunc to correct paragraph Nos. 1 and 3 of the findings in the order entered July 17, 1963, in Application No. M–11437, so that the findings will specifically reflect the decision originally determined and made by the Commission in Application No. M–11437; and, after due consideration of the report in 102 M.C.C. 1, and the Commission's findings made and recorded in Application No. M–11437, the Commission is of the opinion and finds that paragraphs Nos. 1 and 3 of the findings in the order entered July 17, 1963, in Application No. M–11437, should contain the language 'and, therefore, the present or future public convenience and necessity require that Applicant be authorized to engage in intrastate operations as set forth in paragraph No. 5.'

"ORDER

"IT IS, THEREFORE, ORDERED by the Nebraska State Railway Commission that the order entered July 17, 1963, in Application No. M–11437, be, and the same is hereby, corrected nunc pro tunc as set forth in appendix A."

The state commission's order reflects an orderly and proper consideration of its prior records. It sets forth a finding made then but inadvertently omitted. It does not order a finding made now for then, but orders for now a finding made then. This is the traditional role of a nunc pro tunc order. As such, we find the state commission's order properly recites a finding of public convenience and necessity for intrastate as well as interstate operations. The mere fact that this is accomplished by a nunc pro

tunc order is immaterial. It is not a fatal defect as found by the Commission.

■ It should be clear that we are not reviewing a finding of the Commission based upon lack of substantial evidence as to public convenience and necessity for interstate authority under § 206(a) (6) as existing in the state commission record. Whenever the Commission finds that this issue was not properly tried and the state body is merely a "rubber stamp" for an applicant's authority sought under § 206(a) (6), the Commission may properly reverse upon the lack of substantial evidence to support the finding. Here the full Commission does not base its denial on lack of evidence but upon the use of a nunc pro tunc order.

■ We next move to the requirements of notice under § 206(a) (6). The statute requires a reasonable notice to the public that the applicant is seeking authority for a certificate of public convenience and necessity to conduct proposed operations in both intrastate and interstate commerce. The Commission reasons that only notice for the latter authority was given and therefore the notice is deficient. We think a reading of the published notice requires a different interpretation. The notice, published in the May 8, 1963 Federal Register 4639, reads as follows:

"The following applications for motor common carrier authority to operate in *intrastate* commerce seek *concurrent* motor carrier *authorization* in *interstate* or foreign commerce within the limits of the intrastate authority *sought, pursuant to section 206(a) (6) of the Interstate Commerce Act,* as amended October 15, 1962. These applications are governed by Special Rule 1.245 of the Commission's rules of practice, published in the Federal Register, issue of April 11, 1963, page 3533, which provides among other things, protests and requests for information concerning the time and place of State Commission hearings or other proceedings, any subsequent changes therein, and any other related matters shall be directed to the State Commission with which the application is filed and shall not be addressed to or filed with the Interstate Commerce Commission.

\* \* \* \* \* \*

"State Docket No. M–11437, filed April 18, 1963. Applicant: MERRILL O. STEWART, Route 8, Lincoln, Nebr. Applicant's attorney: Donald E. Leonard, 605 South 14th Street, Lincoln, Nebr. *Certificate of public convenience and necessity sought* to operate a freight service as follows: Transportation of *general commodities,* over irregular routes, from points within a 20-mile radius of Lincoln, Nebr., to points in Nebraska.

"HEARING: June 17, 1963, at 9:00 a. m., at the Commission Hearing Room, Capitol Building, Lincoln, Nebr.

"Requests for procedural information, including the time for filing protests, concerning this application should be addressed to the Nebraska State Railway Commission, Motor Transportation Department, State Capitol Building, Lincoln 9, Nebraska, and should not be directed to the Interstate Commerce Commission." (Emphasis ours.)

We think it clear that a reasonable opportunity was given to the public to appear in opposition to the granting of a certificate of public convenience and necessity for operation in both intrastate and interstate commerce. The notice makes plain that concurrent authorizations are sought relating to (1) public convenience and necessity for interstate operation under § 206(a) (6), and (2) public convenience and necessity for intrastate operation. It is agreed that all applicants published similar notices. In construing the notice published here, the Commission overlooks its own emphasis that under § 206(a) (6) a simultaneous finding of public convenience and necessity for both intrastate and interstate certificates is required. The notice published not only sets this forth, but clearly states that the authority sought is pursuant to § 206(a) (6). Thus, the applicants, the public and the state commission are

all notified that a hearing to satisfy the requirements of § 206(a) (6) will take place.

On the basis of our findings we affirm 1388L, Jacobsen Transfer, Inc., since we determine that a finding of public convenience and necessity for intrastate operation was not made by the state commission at the time that Jacobsen sought authorization under § 206(a) (6). In the case of Ray Price, Inc. the state commission made simultaneous findings that public convenience and necessity warranted issuance of both intrastate and interstate authorization. In the applications of Kruse Transportation Company, Inc. and Merrill O. Stewart, Inc. the requisite finding of public convenience and necessity for intrastate operation was duly made retrospective by the state commission's nunc pro tunc order. We therefore vacate the Commission's denial of certificate under § 206(a) (6) as to 1342L, Merrill O. Stewart, Inc.; 1389L, Ray Price, Inc., ; and 1390L, Kruse Transportation Company, Inc., and remand to the Commission for further consideration in view of this opinion.