**MURFREESBORO FREIGHT LINE CO., INC.**

v.

**UNITED STATES of America and the Interstate Commerce Commission.**

Civ. No. 5938.

United States District Court, M. D. Tennessee, Nashville Division.

April 2, 1973.

---

Walter Harwood, Nashville, Tenn., for plaintiff.

Charles H. Anderson, U. S. Atty., and Martha Johnson, Asst. U. S. Atty., for the United States of America.

James F. Tao, Washington, D. C., for the Interstate Commerce Comm.

Eugene W. Ward, Gen. Counsel, and Thomas E. Midyett, Asst. Gen. Counsel, Nashville, Tenn., for intervening defendant, Public Service Comm.

Blaine Buchanan, Chattanooga, Tenn., for intervening defendant, Superior Trucking, Inc.

Before MILLER, Circuit Judge, GRAY, Chief District Judge, and MORTON, District Judge.

PER CURIAM.

This is an action to enjoin, annul and set aside an order of the Interstate Commerce Commission (ICC) granting a certificate of registration to Superior Trucking Service, Inc., the intervening defendant.

Prior to the application now at issue, Superior held interstate and intrastate authority to operate between Chattanooga, Tennessee, Shelbyville, Tennessee, and Manchester, Tennessee; the plaintiff operates between Murfreesboro, Tennessee, and Nashville, Tennessee, with both interstate and intrastate authority; and, since there was no direct service between Chattanooga and Murfreesboro, all freight moving from Chattanooga to Murfreesboro came through Nashville.

In 1969, pursuant to 49 U.S.C. § 306 (a)(6),[1] Superior made application to the Tennessee Public Service Commission for a certificate of public convenience and necessity to transport, in interstate and intrastate commerce, general commodities between Shelbyville, Manchester, and Murfreesboro. In other words, Superior sought to provide direct, single line service between Chattanooga

---

1. Under 49 U.S.C. § 306(a)(6), a common motor carrier operating solely within a single state may obtain authorization from a state commission to engage in interstate commerce within the limits of the intrastate authority granted. Once the state authority is granted, the ICC issues a certificate of registration to the carrier.

and Murfreesboro by tacking the requested authority to the existing authority. If granted, that additional authority threatened to affect the plaintiff's business between Murfreesboro and Nashville, and the plaintiff opposed the application in the proceedings before the Tennessee Public Service Commission.

The proceedings before the State commission, which were preceded by publication of notice and which followed the procedure set forth in 49 U.S.C. § 306 (a)(6), included a hearing on August 11, 1969, before an examiner of the Tennessee Public Service Commission, and the transcript of that hearing contains most of the evidentiary matter in this cause. At that hearing, Superior's president and four others testified on behalf of the applicant, and the plaintiff's traffic manager testified for the plaintiff. Following the hearing, the examiner found that Superior was qualified, fit, willing and able to render the proposed service, that the evidence demonstrated a public need for the proposed service (Report, p. 9), and that the public convenience and necessity required the authorization (Report, p. 10). Accordingly, the examiner recommended that Superior's application be granted. Over the plaintiff's exceptions, the State commission granted the application and, at the same time, ratified, adopted and incorporated by reference the examiner's report.

Thereupon, the plaintiff petitioned the ICC for reconsideration of the decision of the State commission, contending that there was a lack of substantial evidence to support the grant of interstate authority. The plaintiff also relied upon the adverse effect the grant would have on its operation. The ICC affirmed the decision of the State commission and overruled the plaintiff's objections. The plaintiff then filed suit in this Court.

After the present suit had been filed, Superior made application to the ICC, seeking a certificate of public convenience and necessity. This application, designated as the Sub. No. 8 application, was made necessary, in part, because Superior proposed to use the interstate highway (I–24) between Chattanooga and Kimball, Tennessee, and that highway dips across the state line into Georgia. Thus, the previously granted certificate of registration would have to be converted to a certificate of public convenience and necessity because Superior would be operating in more than one state. This later application, duly published in the Federal Register, was unopposed and was granted by the ICC on December 27, 1971.[2]

The principal argument relied on by plaintiff in this Court, as well as before the ICC, is that the grant of authority to Superior was not supported by substantial evidence with respect to interstate commerce. This argument necessarily entails a consideration of the purpose and effect of the statute in question, the procedure followed thereunder, and the scope of review.

By the enactment of 49 U.S.C. § 306 (a)(6), Congress established a new procedure whereby a common carrier, operating within a single state, could obtain a certificate of registration authorizing corresponding interstate operations.

■ This new procedure entailed the following steps: the filing of an application before the appropriate State commission; publication of notice in the Federal Register; an opportunity for interested persons to be heard; a finding by the State commission that public convenience and necessity require the authorization for both interstate and intrastate operations; and, upon petition of any party in interest, review by the ICC. The ICC's review of the State

2. It has been suggested that this subsequent grant of authority supersedes the ICC's grant in the Sub. No. 7 application, which is being contested in the case at bar, and renders the action moot.

The Court, however, is of the opinion that the instant case is not moot because the subsequent certificate granted by the ICC was predicated upon the authorization now in question.

commission's initial determination must be based entirely on the record before the State commission, and the ICC may modify or reverse only when the findings of the State commission are inconsistent "with those public convenience and necessity standards normally applied under the remaining provisions of the Interstate Commerce Act" or when those findings are not based upon substantial evidence. John E. Dugan Extension— Certificate of Registration, 99 M.C.C. 557 (1965). In determining the validity of the order in question, therefore, the Court must decide whether the proper procedure has been followed, whether there has been a finding that the public convenience and necessity required the proposed service, and whether those findings are supported by substantial evidence in the record before the State Commission. Goggin Truck Line, Inc. v. United States, 276 F.Supp. 884 (M.D. Tenn.1967); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1945).

In accordance with these guidelines and the language of the statute, the Court finds that the procedural requirements have been met in the case at bar and that the orders of the State commission and the ICC contain adequate findings with respect to the interstate authorization.

The Court is further of the opinion that there is substantial evidence in the record to support the findings of the State commission. All of the applicant's witnesses before the Tennessee hearing examiner testified as to the delay occasioned by the routing of freight from Chattanooga, through Murfreesboro to Nashville and back to its final destination in Murfreesboro; and, while only one of the witnesses testified directly about interstate shipments, the testimony of the other witnesses, testifying directly about intrastate shipments, also demonstrated the problems with the existing interstate service between Murfreesboro and Chattanooga and the need for the proposed service. A shipper, Mr. Seals, testified about the movement of goods in interstate commerce through the Chattanooga gateway to Murfreesboro via Nashville and about the problems created thereby. His testimony, by itself, would probably be sufficient to constitute a substantial basis for the commission's findings; but his testimony, considered with the testimony of the other witnesses before the examiner, strongly supported the findings that the interstate traffic destined for Murfreesboro and moving through the Chattanooga gateway was substantial, that the delay inherent in the existing service, as compared with Superior's proposed overnight service, demonstrated a need for the proposed service and, therefore, that the public convenience and necessity required the granting of the proposed service.

Accordingly, the Court holds that the findings of the Tennessee Public Service Commission, as approved by the ICC, are supported by substantial evidence on the record as a whole, and that the ICC order in question is legally valid.