**PENINSULA AIR DELIVERY,**
**Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Respondents.**

**No. 78–2099.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1980.

Decided Oct. 6, 1980.

Walter H. Walker, III, San Francisco, Cal., for petitioner.

H. Glenn Scammel, Washington, D. C., for respondents.

* Of the District of Arizona.

Before WRIGHT and POOLE, Circuit Judges, and CRAIG, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

This appeal presents two questions: (1) whether the decision of the Interstate Commerce Commission (ICC) to issue a certificate of registration to Blue Ribbon Express (BR) was supported by the record; and (2) whether the procedure followed complied with the Interstate Commerce Act. We affirm the Commission's issuance of the certificate of registration.

## FACTS

In 1976, Blue Ribbon Express (BR) applied to the California Public Utilities Commission (CPUC) and the ICC for a certificate of registration under § 206(a)(6) of the Interstate Commerce Act. 49 U.S.C. § 306(a)(6). Peninsula Air Delivery (PAD), a competitor, opposed its application.

Section 206(a)(6) provides a streamlined certification procedure for motor carriers engaging in interstate commerce incidental to their intrastate operations. The carrier's application is considered initially by the appropriate state agency. If it decides to authorize the incidental interstate operation, it must recite in the record that: (1) notice by publication in the Federal Register was given to interested persons; (2) they had a reasonable opportunity to be heard; (3) it "duly considered the question of the proposed interstate and foreign operations;" and (4) it found that "public convenience and necessity require [the service]." *Id.*

State authorization must "be evidenced by appropriate certification of registration issued by the [Interstate Commerce] Commission." Any party who opposed the carrier's application before the state agency may petition the ICC to "affirm, reverse, or modify the decision of the State commission . . . ." *Id.* The ICC's review is solely

on the record generated by the state agency.[1]

Contrasted with the above procedure under which carriers operating wholly within a state may receive a *certificate of registration* to engage in interstate and foreign commerce incidental to their intrastate operation, the Interstate Commerce Act (ICA) also provides the procedure under which the ICC issues *certificates of convenience and necessity* to carriers authorizing them to engage in interstate commerce.[2]

1. Section 206(a)(6) of the Interstate Commerce Act, 49 U.S.C. § 306(a)(6), provides:

(6) On and after the date of the enactment of this paragraph no certificate of public convenience and necessity under this part shall be required for operations in interstate or foreign commerce by a common carrier motor vehicle operating solely within a single State and not controlled by, controlling, or under a common control with any carrier engaged in operations outside such State, if such carrier has obtained from the commission of such State authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce and such certificate recites that it was issued after notice to interested persons through publication in the Federal Register of the filing of the application and of the desire of the applicant also to engage in transportation in interstate and foreign commerce within the limits of the intrastate authority granted, that reasonable opportunity was afforded interested persons to be heard, that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intrastate operations authorized to be conducted. Such operations in interstate and foreign commerce shall, however, be subject to all other applicable requirements of this Act and the regulations prescribed hereunder. Such rights to engage in operations in interstate or foreign commerce shall be evidenced by appropriate certificates of registration issued by the Commission which shall be valid only so long as the holder is a carrier engaged in operations solely within a single State, not controlled by, controlling, or under a common control with a carrier engaged in operation outside such State, and except as provided in section 5 and in the conditions and limitations stated herein, may be transferred pursuant to such rules and regulations as may be prescribed by the Commission, but may not be transferred apart from the transfer of the corresponding intrastate certificate, and the transfer of the intrastate certificate without the interstate or foreign rights shall terminate the right to engage in interstate or foreign commerce. The termination, restriction in scope, or suspension of the intrastate certificates shall on the 180th day thereafter terminate or similarly restrict the right to engage in interstate or foreign commerce unless the intrastate certificate shall have been renewed, reissued, or reinstated or the restrictions removed from within said one hundred eighty-day period. Such rights shall be subject to suspension or termination by the Commission in accordance with the provisions of this Act governing the suspension and termination of certificates issued by the Commission. The Commission may impose reasonable requirements with respect to the filing with it of certified copies of such State certificates and other appropriate statements and data, and compliance with applicable requirements established by and under the authority of statutes applicable to interstate and foreign operation administered by the Commission, as conditions precedent to engaging in interstate and foreign operations under the authority of such State certificate. In accordance with such reasonable rules as may be prescribed by the Commission, any party in interest, who or which opposed in the State commission proceeding the authorization of operations in interstate or foreign commerce, may petition the Commission for reconsideration of the decision of the State commission authorizing operations in interstate or foreign commerce, and upon such reconsideration upon the record made before the State commission, the Commission may affirm, reverse, or modify the decision of the State commission, but only with respect to the authorization of operations in interstate and foreign commerce.

2. Section 207(a) of the Interstate Commerce Act, 49 U.S.C. § 307(a), provides in part:

(a) Subject to Section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this [part] and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present [of] future public convenience and necessity; otherwise such application shall be denied  .   .   .

**614**

## DISCUSSION

PAD argues that (1) the record before the CPUC was not sufficient to demonstrate a need for interstate operations; (2) both the CPUC and the ICC failed to make a fitness finding; and (3) the ICC failed to comply with the Administrative Procedure Act (APA) by failing to issue a complete written decision and order. We reject all of these arguments.

## SUFFICIENCY OF THE RECORD:

### (1) *Scope of Review by ICC and Court:*

The state agency has the primary responsibility for authorizing incidental interstate operations. It considers whether the public convenience and necessity require the interstate service and recites its conclusions in the record. The ICC is required to review the state's authorization only if an interested party objects and, on review, cannot take new evidence to support findings of its own. ICA § 206(a)(6), 49 U.S.C. § 306(a)(6).

Congress intended only to require the ICC to give the best review reasonably possible on the state agency's record, not to make its own findings and conclusions on each element of the public convenience and necessity test. Section 206(a)(6) provides a streamlined certification procedure for incidental interstate operations. Requiring the ICC to redetermine public convenience and necessity would prevent efficient administration of certificate applications. ICA § 206(a)(6); H.Rep. 1090, 87th Cong., 2d Sess., Reprinted in (1962) U.S.Code & Cong. & Admin.News, p. 3165.

In *John E. Dugan, Extension–Certificate of Registration*, 99 M.C.C. 577 (1965), the ICC declared that it would review the state agency's record to determine whether certification was inconsistent with the public convenience and necessity. We hold that this standard of ICC review is appropriate under § 206(a)(6).

Section 206(a)(1) of the Interstate Commerce Act, 49 U.S.C. § 306(a)(1), provides in part: Except as otherwise provided in this section and in section 210a, no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway, or

In determining the validity of a state agency's decision in a certificate of registration case this court reviews: (1) proper procedure; (2) whether there was a finding that public convenience and necessity required the proposed service; and (3) whether there was substantial evidence to support those findings. *Murfreesboro Freight Line Co. v. United States*, 357 F.Supp. 336 (M.D.Tenn.1973); *Goggin Truck Line, Inc. v. United States*, 276 F.Supp. 884 (M.D.Tenn.1967).

### (2) *Certificate of Convenience and Necessity:*

Here the record shows that the CPUC gave Federal Register notice, held a hearing at which BR and PAD appeared and offered witnesses, and made findings on intrastate and interstate public convenience and necessity.

PAD's argument that the CPUC must apply the criteria of *Pan American Bus Lines Operation*, 1 M.C.C. 190 (1936), to its determination to convenience and necessity would subject a state agency to the same requirements in a certificate of registration proceeding as are faced by the ICC in applications for certificates of convenience and necessity under ICA §§ 206(a)(1) and 207(a), U.S.C. §§ 306(a)(1) and 307(a). This argument is supported neither by the language of § 206(a)(6) nor the legislative intent, (1962) U.S.Code & Cong. & Admin.News, H.R. 1090, p. 3165, *supra; Ray Price, Inc. v. United States*, 297 F.Supp. 55 (D.Neb.1969); *Merrill v. Stewart Certificate of Registration*, 102 M.C.C. 1 (1966). We find that the record sufficiently indicates that the CPUC considered the requisite elements of convenience and necessity and made adequate findings.

## FITNESS FINDING

PAD argues that § 207(a) requires the ICC to make a specific fitness finding when

within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations . . . . .

issuing any "certificate." 49 U.S.C. § 307(a). Section 207(a) was enacted in 1935, long before § 206(a)(6) was added in 1962, and we read "certificate" to mean "certificate of public convenience and necessity."

The CPUC addressed the elements of fitness sufficiently in its order, stating:

applicant has the business experience, the facilities, and the ability, including financial ability, to initiate and maintain the proposed service.

WRITTEN DECISION AND ORDER

The APA requires an agency decision to include:

findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record.[3]

The ICC concluded summarily that CPUC's authorization was "proper and correct in all material respects." We find this an adequate statement of its decision.

After reviewing the CPUC's decision the Commission stated:

[T]he procedures followed [by the CPUC] in reaching such conclusions and findings are in accordance with the requirements of Section 206(a)(6) of the Act, as amended; *Dugan Extension–Certificate of Registration*, 99 M.C.C. 557 [1965].

A short–form expression of finding by the ICC has been held proper. *See Kerner Trucking Service, Inc.*, 108 M.C.C. 888, 889 (1969), *aff'd sub nom. Brake Delivery Service v. United States*, 306 F.Supp. 629 (D.Cal.1969). *Cf. American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970).

The issuance of the certificate is AFFIRMED.

---

**3.** Section 557 of the Administrative Procedure Act, 5 U.S.C. § 557, provides in part:

The record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of--

(A) findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record; and
(B) the appropriate rule, order, sanction, relief, or denial thereof.