June 25, }
  1925.  }

## PETITION OF BOSTON & MAINE RAILROAD.

The public service commission is an agency of limited powers and authority,
   having no powers other than such as are conferred upon it, expressly or by
   fairly implied inference, by legislative enactment.

The public service commission has no power to authorize the discontinuance of
   operation of the whole or a part of a railroad.

The distinction between continuity of service and regulation of service is impor-
   tant and well defined.  How far service may be curtailed by regulation and
   yet remain continuous is largely a question of fact, depending on conditions
   and circumstances.

A general regulatory authority over railroad service conferred by statute upon
   the public service commission does not give the commission power to authorize
   either the abandonment of any part of a railroad or the discontinuance of
   service thereon during a substantial part of the year.

PETITION, to the public service commission for authority to dis-
continue the operation of the railroad's branch line from Wing Road
to Fabyan from October 15 to May 15 of each year.  The town of
Carroll appeared in protest and moved the dismissal of the petition
for lack of jurisdiction.  The commission transferred the question
of its jurisdiction.

*Archibald R. Tisdale* (of Massachusetts, by brief and orally), for
the petitioner.

*Nathaniel E. Martin* and *Alfred W. Levensaler* (by brief), for the
protestant.

ALLEN, J.  The public service commission is an agency of limited
powers and authority.  While the legislature may delegate to such
an agency certain of its own powers and authority, the exercise of
such delegation does not extend beyond expressed enactment or its
fairly implied inferences.  The establishment of such an agency is
of a special rather than general character, and power and authority
not granted are withheld.

The act creating the commission (Laws 1911, c. 164) by section 3
gives it "all the powers and duties" of the railroad commission
whose place it took, so far as consistent with the act, and additional
powers as defined and specified.

None of these additional powers confer any authority on the com-
mission to permit a railroad either to abandon any part of its line

or to cease or suspend operation thereof. The "general supervision" of railroads given by section 5 of the act is expressly limited to such as is "necessary to carry into effect the provisions" of the act, and hence is only incidental to other authority. It may also be noted that this general clause as to supervision is to be found in the legislation providing for the authority of the railroad commission, and at most gives the public service commission only such authority as the railroad commission had from the similar legislation applying to it. As will appear later, the supervision of railroads delegated to the railroad commission was confined to specific limitations.

By section 4, "Every railroad . . . shall furnish such service and facilities as shall be reasonably safe and adequate and in all respects just and reasonable." But aside from the authority given the commission by other sections over tariffs and charges, and to regulate certain features of freight service, the commission had no power under the act to prescribe or enforce reasonable service and facilities except as a regulation of safety. See s. 11 (f).

By amendment (Laws 1913, c. 145, s. 11; Laws 1915, c. 99, s. 5) the restriction to regulations of safety was removed, and the commission was broadly empowered to "fix and prescribe" "just, reasonable, safe, adequate and proper regulations, practices, equipment, appliances and service" in place of those found deficient in such qualities. If the commission was thereby authorized to permit curtailment of service, the amendment did not go so far by any reasonable construction as to give the commission authority to permit either the abandonment of any part of a railroad or the discontinuance of service thereon during a substantial part of the year. If it be assumed that general regulatory authority over service was thereby granted as fairly within the intendment of the act so as to include the authority to permit limitations and lessening of service, as adequate for a limited or lessened public demand, yet regulation is not inclusive of cessation or suspension of service.

The distinction between continuity of service and regulation of service is important and well defined. How far service may be curtailed by regulation and yet remain continuous is largely a question of fact, depending on conditions and circumstances. Limited service may be reasonable. Whether the running of a passenger train each way once a day except Sundays is an irreducible minimum of continuous service does not here require consideration. Complete suspension of service for a consecutive period of seven months in each year must be held to be a discontinuance.

In respect to the powers of the railroad commission taken over by the public service commission, no legislation was passed delegating to the railroad commission the authority here under inquiry.

While a railroad commission was established in 1844 (Laws 1844, c. 28), not until 1883 (Laws 1883, c. 101) was it given any regulation of railroads. Until then its powers were practically limited to laying out railroads and inspecting their condition. By the 1883 law, in addition to authority already existing the commission was given "general supervision of all railroads" and was required to "examine them, keep itself informed as to their condition, the manner in which they are operated with reference to the security and accommodation of the public and the compliance of the several corporations with their charters and the laws of the state." It was also assigned the duty of fixing maximum rates, and this was the only delegated power of regulation. While by sections 6 and 7 of the act the commission was authorized to determine what repairs, physical alterations, changes of rates and "the mode of operating its road and conducting its business" the accommodation of the public required a railroad to make, it was given no authority to order changes to be made and a railroad was not required to adopt its findings. In 1889 (Laws 1889, c. 90) the commission was given the power to limit the speed of trains in the compact part of a city or town. Aside from this power and its power to fix maximum tariffs, no regulatory authority over railroads appears ever to have been granted the railroad commission in express terms.

The "general supervision" over railroads given by the 1883 act is to be construed in the light of the entire act and the context. Thus considered, it was only a delegation of such power and authority as was defined and specified, and contemplated no comprehensive grant of legislative control over the subject. The provisions of sections 6 and 7 already mentioned, limiting the commission to advice and recommendation respecting matters of condition and operation, denote a purpose to grant no general and unspecified authority to regulate, with power to make and enforce orders in respect thereto. Having only such authority to regulate as was expressly defined, the commission was not invested with authority beyond regulation. General supervision did not give general jurisdiction, and the import of the words was only to establish incidental authority to reënforce the specific powers mentioned. It was ancillary rather than superior to them.

But the petitioner urges that certain changes of phraseology in

the reënactment of legislation gave the railroad commission the authority sought to be established.

In 1844 (Laws 1844, c. 128) a general law relating to railroads was enacted, s. 16 of which provided that "Such corporation shall not discontinue its road, nor neglect to keep the same in good repair, nor omit to discharge its duties in carrying passengers, merchandize or other freight, without the consent of the legislature. . . ." In the revision of statutes in 1867, this statute was amended so as to read as follows: "The proprietors of every railroad shall in all things conform to the requirements of the laws, shall not discontinue their road nor any part of it, shall keep it all in good repair, and discharge their duties in carrying passengers and freight agreeably to the proper object and purpose of such railroad." Gen. Sts., c. 145, s. 3.

The omission of the words "without the consent of the legislature" made no change in the effect and scope of the statute amended. The change was of form and not of substance. The power of the legislature to consent to a discharge or modification of a railroad's duties in the respects indicated was not lost by the failure expressly to reserve it. Having the power inherently by virtue of its control over railroads, the legislature did not divest itself of such power by striking out words which were superfluous. There was no contemporaneous delegation of the power to another body, the railroad's duties remained unaltered and unaffected, and the legislature deprived itself of none of its power. The failure to express a retention of power was immaterial because of its retention without expressing it, and constituted no delegation of the power to the railroad commission. The powers expressly given the commission being limited as already shown, a delegation of such broad and expanded authority as is claimed cannot be implied from a change in the language of legislation which merely omits a previously existing overcautionary and inconsequential phrase. The rephrasing does not indicate any change of legislative policy.

In further showing of the legislative intent, the public service commission act was amended in 1917 (Laws 1917, c. 82) by giving the commission power to authorize any street railway or public utility temporarily or permanently to discontinue operation or service if the public were not unreasonably inconvenienced thereby. In 1921 (Laws 1921, c. 139) the amendment was broadened to include seasonal discontinuance of such enterprises, and also to bring certain specified steam railroad lines within its application.

These enactments show the evident legislative understanding that

the commission had no power under the law establishing it to permit discontinuance of operation or service, and confirm the conclusion of a general legislative policy not to delegate power to relieve steam railroads from their duty to render service, as distinct from the manner of rendering it. The argument that the inclusion of certain steam railroads in the 1921 act cited was in obliviousness of an already existing power fails because, as already pointed out, no such power had theretofore been granted, and the principle that the inclusion of what is specified excludes what is not is reasonably applicable.

It is plain that the commission is without jurisdiction.

*Petition dismissed.*

PLUMMER, J., was absent: the others concurred.