Public Utilities Commission, } No. 4162.
Feb. 3, 1953.

MANCHESTER & a.

*v.*

BOSTON & MAINE RAILROAD.

*J. Francis Roche* for the plaintiffs.

*Robert J. Fletcher* and *Parker Brownell* of Massachusetts (*Mr. Brownell* orally), for the defendant.

*Gordon M. Tiffany*, Attorney General, *John N. Nassikas*, Assistant Attorney General and *Arthur E. Bean, Jr.*, Law Assistant (*Mr. Bean* orally), for the State of New Hampshire.

GOODNOW, J.  This appeal involves both an examination of certain findings of the commission to which the petitioners object and a determination of the justice and reasonableness of the commission's decision and order.

Findings upon which a decision and order are to be based are the primary responsibility of the commission.  Its findings are to be deemed *prima facie* lawful and reasonable.  R. L., *c.* 414, *s.* 13.  The accuracy of those findings may be reviewed here.  *New Eng. Tel. & Tel. Co.* v. *State*, 95 N. H. 353, 360.

The commission made certain findings as to the view afforded at various distances from the crossing to persons approaching the crossing which included distances of fifteen hundred feet and more in both a northerly and southerly direction along the tracks.  To these findings the petitioners object on the ground that there is no evidence to support them, pointing out that neither party introduced any direct testimony of available views and that the only plan of the crossing from which a determination could be made as to view covered an area of merely four hundred and fifty feet north and south of the crossing.  This plan bore on it a statement of the views available at various distances on both approaches to the crossing which coincide with the findings of the commission.  While no direct testimony concerning the distances of available views was introduced by either party, no mention or objection was made during the hearing concerning these statements on the plan.  Some months after the conclusion of the hearings, the commission visited and examined the area of the crossing.  What it observed at that time furnished evidence of available views at the approaches to the crossing.  *Gelinas* v. *Portsmouth*, 97 N. H. 248, 251; *Tetreault* v. *Gould*, 83 N. H. 99, 102.  It then had before it the plan

in question. The evidence thus secured is sufficient to support its findings on visibility and distances and there being no evidence contrary to those findings, they are deemed to be reasonable.

Other objections of the petitioners center about the findings that the reliability and effectiveness of automatic protection is greater than that of the human being and that at this crossing a proper coordination of automatic crossing lights, gates and traffic control would result in more dependable protection than that which now exists. The findings of the commission concerning the advantages in general of automatic systems over human ones is well supported in the evidence by detailed testimony based on experience in the use of automatic signals and other devices, the reliability of their use even in the event of power failure and the occasional failure of manually operated gates. To rebut the accuracy of these findings the petitioners rely first upon what they term to be Interstate Commerce Commission records. The Interstate Commerce Commission statistics in question concerned the year 1947 and were contained in a question put by petitioners' counsel in which he inquired if the witness would be in a position to agree or disagree with them. To this question the witness replied that he would not disagree without seeing the figures and that "we haven't '47." Under such circumstances, the records of the Interstate Commerce Commission are not in evidence in the case. The petitioners also urge upon us the part which a watchman plays in protecting careless pedestrians, unthinking children and stalled motorists as well as the fact that there have been no accidents at this particular crossing while it has been protected by watchmen. These were matters of evidence before the commission and the reference in its decision to the fact that petitioners' position before it was based almost entirely on the premise that a human being is better able to meet the requirements of warning the public than automatic devices indicates that the commission weighed those claims before reaching its contrary conclusions. Considering these matters together with the evidence which supports the questioned findings of the commission, we feel that the petitioners have not sustained their burden of proving those findings to be unreasonable or unlawful and they are therefore affirmed.

The commission also decided that the installation of specified automatic protections at this crossing is consistent with the interests of public safety. R. L., c. 299, s. 35, as amended by Laws 1951, c. 203, s. 58, p. 497. In reaching this decision, findings were made con-

cerning the amount and nature of traffic at the crossing, the situation in the adjoining street intersection and the cost of each type of protection as well as the findings concerning the available view and the adequacy and efficiency of an automatic system which are discussed elsewhere in this opinion. In resolving the fundamental conflict between an automatic and a human protective system at this crossing the commission recognized the public interest as paramount. The decision and the order of the commission are fully supported by its findings. The evidence in support of the watchman type of protection does not satisfy us, by the clear preponderance required by the statute, that either the decision or the order is unjust or unreasonable.

Accordingly the decision and order of the commission are affirmed.

*Appeal dismissed.*

All concurred.