CENTRAL MOTOR EXPRESS, INC., and Killion Motor Express, Inc., Complainants,

*v.*

HAMMOND FOWLER, Cayce Pentecost, and Z. D. Atkins, constituting the Tennessee Public Service Commission, and Knoxville-Maryville Motor Express, Inc., Defendants.

419 S.W.2d 170.

(*Nashville*, December Term, 1966.)

Opinion filed September 18, 1967.

BLAINE BUCHANAN, Chattanooga, for complainants.

CLARENCE EVANS, of counsel, FARRIS, EVANS & EVANS, Nashville, and EUGENE W. WARD, Nashville, General Counsel for the Tennessee Public Service Commission, for defendants.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Knoxville-Maryville Motor Express, Inc., a motor common carrier of property operating in Tennessee intrastate and interstate commerce under Certificates of Public Convenience and Necessity issued to it by the Tennessee Public Service Commission and the Interstate Commerce Commission, serving Knoxville, Oak Ridge, Sevierville, Pigeon Forge, Gatlinburg, Rockford, Alcoa, and Maryville, made application to the Tennessee Public Service Commission as follows:

"IN RE: APPLICATION OF KNOXVILLE-MARY-
VILLE MOTOR EXPRESS, INC., KNOXVILLE,

TENNESSEE, FOR A CERTIFICATE OF CON-
VENIENCE AND NECESSITY TO TRANSPORT
GENERAL PROPERTY, EXCLUDING HOUSE-
HOLD GOODS AND LIQUID COMMODITIES IN
BULK FROM OAK RIDGE TO OLIVER
SPRINGS AND WARTBURG, TENNESSEE ON
STATE ROUTE 62, INCLUDING PETROS ON
STATE ROUTE 116, FROM WARTBURG TO
SUNBRIGHT ON U. S. 27, AND RETURN, SERV-
ING ALL INTERMEDIATE POINTS; WART-
BURG TO HARRIMAN, TENNESSEE VIA
ROUTE 27 ON TO HIGHWAY JUNCTION OF
ROUTE 27; THENCE U. S. HIGHWAY 70 AND/
OR I-40 TO ROCKWOOD, TENNESSEE:
THENCE U. S. HIGHWAY 70 AND/OR I-40
JUNCTION: THENCE U. S. HIGHWAY 70 AND/
OR I-40 TO ROCKWOOD, TENNESSEE:
THENCE U.S. 70 AND/OR I-40 TO MIDTOWN,
KINGSTON AND KNOXVILLE, TENNESSEE.
ALL OF SAID ROUTES TO BE OPERATED IN
CONJUNCTION WITH CARRIER'S PRESENT
AUTHORITY. ALTERNATE ROUTE: OLIVER
SPRINGS TO HARRIMAN, TENNESSEE VIA
STATE ROUTE 61 AND U.S. HIGHWAY 27,
SERVING ALL INTERMEDIATE POINTS ON
SAID HIGHWAYS."

Application was also made for a certificate authorizing service to Luttrell, Tennessee and return over a described route, but the certificate issued on this application is not involved in this appeal.

Applicant served notice on the Commission, and it also sought corresponding interstate authority from the In-

terstate Commerce Commission pursuant to Section 206 (a)(6) of the Interstate Commerce Act, amended October 15, 1962, giving notice in the Federal Register of May 19, 1965, Colume 30, pp. 6805 and 6806.

The application was contested by Central Motor Express, Inc., and Killion Motor Express, motor common carrier of property also operating in Tennessee in interstate and intrastate commerce under certificates from the Interstate Commerce Commission and the Tennessee Public Service Commission.

After a full hearing the Commission issued Certificates of Convenience and Necessity, both as to the contested and uncontested routes, as applied for by Knoxville-Maryville Motor Express, Inc. providing in its order the new route was to be operated in conjunction with the carrier's present routes. Acting pursuant to Section 206(a)(6) of the Interstate Commerce Commission Act, as amended, it found and held the applicant carrier would be authorized to engage in operations in interstate and foreign commerce within limits not to exceed the scope of the intrastate operations authorized.

Central Motor Express and Killion Motor Express had the Commission's order reviewed by the chancery court, which sustained the order.

We now have the case on appeal with the issues narrowed down to the following: (1) Whether in finding, pursuant to Section 206(a)(6) of the Interstate Commerce Act, (Section 306(a)(6) of Title 49 U.S.C.A.), the applicant should be granted authority to engage in interstate and foreign commerce over its new route, the Commission exceeded its authority, and so its order is void. (2) Whether in providing in its order that applicant's new route should be operated in conjunction with its

present authorized route the Commission exceeded its authority, and its order is void. (3) Whether the Commission's order is void in the absence of evidence of contracts with carriers for the interchange of interstate freight at the applicant's terminal points.

The Commission's order with respect to interstate commerce recites that it is made pursuant to Section 206 (a)(6) of the Interstate Commerce Act, as amended. This section provides in relevant part as follows:

"On and after October 15, 1962 no certificate of public convenience and necessity under this chapter shall be required for operations in interstate or foreign commerce by a common carrier by motor vehicle operating solely within a single State and not controlled by, controlling, or under a common control with any carrier engaged in operations outside such State, if such carrier has obtained from the commission of such State authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce and such certificate recites that it was issued after notice to interested persons through publication in the Federal Register of the filing of the application and of the desire of the applicant also to engage in transportation in interstate and foreign commerce within the limits of the intrastate authority granted, that reasonable opportunity was afforded interested persons to be heard, that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign com-

merce within limits which do not exceed the scope of the intrastate operations authorized to be conducted. Such operations in interstate and foreign commerce shall, however, be subject to all other applicable requirements of this Act and the regulations prescribed hereunder." 49 U.S.C.A. sec. 306, pp. 115-116.

■ The contesting carriers' argument the Commission's order with respect to interstate and foreign commerce is void, is summarized in the statement in their brief as follows:

"There appears to be no express statute authorizing the Tennessee Commission to exercise the authority above indicated, nor to accept and discharge the delegation of authority by the Federal Congress under sec. 206 (a)(6) of the Federal Motor Carrier Act."

This contention is coupled with the argument that T.C.A. sec. 65-1505 and cases construing it such as *Dunlap v. Dixie Greyhound Lines,* 178 Tenn. 532, 160 S.W.2d 413; and *McCanless v. Southeastern Greyhound Lines,* 178 Tenn. 614, 162 S.W.2d 370, are to the effect that the chapter creating the Tennessee Public Service Commission is not to be construed to regulate or apply to interstate or foreign commerce.

But we are unable to agree with this contention and argument. For, the very Code section defining Commission's jurisdiction contains an exception which quite reasonably can be construed as permitting the Tennessee Commission to exercise the powers conferred on it by Section 206 (a)(6). T.C.A. sec. 65-1505 limits the Commission's powers in interstate and foreign commerce "except in so far as the same may be permitted under the Constitution of the United States and the acts of congress."

■ This exception should be read as giving the Tennessee Commission authority to cooperate with the Interstate Commerce Commission under Section 206 (a)(6) of the Motor Carrier Act, in determining the convenience and necessity for the interstate carriage of goods over the same routes under consideration for the carriage of intrastate goods.

■ ■ But we go further and hold that even without this exception, the Commission is authorized to cooperate as it did.

First, the matter of cooperating with the Interstate Commerce Commission under Section 206 (a)(6) is discretionary with the Commission; in the sense cooperation is purely voluntary. Second, this is not prohibited by any law. Third, it can be done at no additional expense to the Commission or the State. And, finally, this arrangement serves the convenience of carriers in securing interstate authority with the least possible trouble, inconvenience and expense and so serves the convenience and necessity of the public.

■ The Tennessee Public Service Commission has general obligations imposed on it by T.C.A. sec. 65-1501, to promote and serve the interests and convenience of the public; to foster, promote, to preserve and protect the highways and the welfare and safety of the travelling and shipping public in their use of the highways. It is obvious Section 206 (a)(6) was enacted by Congress for expeditious, economical ascertainment of the convenience and requirements of the shipping public, and the public generally, so by cooperating under this statute the Commission serves these purposes, for which it was created.

We cannot agree with appellants' second contention that the order is void because it authorized the use of the new routes granted in conjunction with applicant's existing routes.

It is argued the order is void for lack of any evidence showing the convenience and necessity for this arrangement. That in the absence of such evidence the Commission could not make this order.

For twenty-two years, under authority of Chapter 167, Acts of 1937, codified T.C.A. sec. 65-1508, it was the declared public policy of the State to permit a motor freight carrier with two or more certificates of convenience and necessity to carry from one end of its route to the other end if the two routes had a common point of designation and departure. In other words, if a carrier's two routes ran from A to B, and from B to C, goods could be carried from A to C without an additional certificate so authorizing.

In 1959, T.C.A. sec. 65-1508 was repealed. While this repeal abolished automatic route tacking, it left reposed in the Commission a discretion whether to permit tacking of two routes, or not. This, because tacking is just another operational arrangement falling under the Commission's authority.

But this does not answer the question posed by appellants; which is, whether tacking can be ordered by the Commission in the absence of proof introduced at the hearing on the application for a certificate.

It is our considered judgment that under some circumstances, the Commission may make such an order without direct, formal proof: as when there is no substantial, material evidence against tacking; or there is

no showing the tacking order is either confiscatory or substantially prejudicial to the appellant or contestants. In such a case we think the Commission is free to apply its presumed professional and expert knowledge and information in determining what is in the public interest. *Ayrshire Collieries Corp. v. United States,* Ind., 335 U.S. 573, 69 S.Ct. 278, 93 L.Ed. 243; *Application of Illinois Cent. R. Co.,* 241 Iowa 333, 41 N.W.2d 98; *Southeastern Greyhound Lines v. Taylor,* 306 Ky. 767, 209 S.W.2d 330; *People ex rel. Fordham Manor Reformed Church v. Walsh,* 244 N.Y. 280, 155 N.E. 575; *Special Indem. Fund v. Jennings,* 201 Okl. 330, 205 P. 2d 873; *Pierce Auto Freight Lines v. Flagg,* 177 Or. 1, 159 P.2d 162; *Harrison v. Zoning Board of Review of City of Pawtucket,* 74 R.I. 135, 59 A.2d 361; *State ex rel. Country Club of Seattle v. Department of Public Service,* 198 Wash. 37, 86 P.2d 1104.

■ Since for twenty-two years it was the declared public policy of the State to permit automatic tacking, it should certainly be held within the discretionary power of the Commission to permit it under the circumstances we have outlined.

Turning to appellants' third proposition, we are of opinion the Commission's order is not void for lack of evidence of contracts with carriers for the interchange of interstate freight at applicant's terminal points.

The applicant carrier argues that the availability of interstate connecting carriers is relevant only to the question of *interstate convenience and necessity.* That review of any aspect of the interstate features of the application is provided for in Section 206(a) (6), through the Interstate Commerce Commission, and then through

the federal courts. Reference is made to the last sentence of Section 206(a) (6) so holding.

It appears the contesting appellees have exhausted their administrative remedies through the Interstate Commerce Commission, which has finally ruled against them. Knoxville-Maryville Motor Express, Inc. Extension-Certificate of Registration MC 97904, Sub. 2, decided May 18, 1966. It also appears that so far appellants have not sought judicial review of the Commission's order in the federal courts as provided in Title 28 U.S.C. secs. 2321, 2325.

█ This being the state of affairs, we agree with the appellee carrier that it would not be in order for this Court now to review the validity of the interstate authority already approved by the Interstate Commerce Commission, because of the asserted absence of evidence which relates exclusively to the interstate commerce aspect of the application. If the Interstate Commerce Commission is satisfied with the interstate exchange aspect of the application, certainly, this Court should be.

█ Additionally, we think that here again we have a matter as to which, in the absence of material, substantial proof to the contrary, the Commission may bring to bear, and act, upon its own expert knowledge and information. Actually, it would so reasonably be expected that carriers for the interchange of interstate commerce at applicants' terminal points would be available, that, as observed by a member of this Court upon the argument of the case at the Bar, when the case has gotten as far as this Court the question might well be, whether there is any evidence that carriers are not available for the interchange of interstate commerce. But we do not so hold. We rest on this question being one for the Inter-

state Commerce Commission; and on the presumed knowledge of the Commission.

■ We add a word of caution to our limited approval of the Tennessee Commission's use of its own expert knowledge and information. That is, that in such cases the Commission should summarize the same in its findings, so that it will be available for court review. We are not inclined to hold the absence of such a resume is prejudicial error in this case, as it is obvious on the face of the record the route tacking authorized is in the public's interest; and its absence on the interchange question is immaterial for reasons we have stated.

The assignments of error are overruled and the decree of the Chancery Court and the order of the Commission are affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.