SOUTHERN PACIFIC TRANSPORT COM-
PANY OF TEXAS et al., Appellants,

v.

RAILROAD COMMISSION of Texas et al.,
Appellees.

No. B–3468.

Supreme Court of Texas.

Jan. 10, 1973.

------♦------

Baker & Botts, Houston, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, ·Damon R. Capps, Houston, for appellants.

John L. Hill, Atty. Gen., Rex White, Asst. Atty. Gen., Doherty & Robertson, James M. Doherty, Austin, for appellees.

POPE, Justice.

Southern Pacific Transport Company of Texas and Louisiana and Southwestern Transportation Company appealed from an order of the Railroad Commission which granted certain amendments to a common carrier certificate owned by Red Arrow Freight Lines, Inc. The trial court, except for certain matters which will hereafter be noticed, sustained the orders of the Railroad Commission. Southern Pacific and Southwestern then perfected this direct appeal as authorized by Rule 499a, Texas Rules of Civil Procedure. The main legal question here presented is whether the Railroad Commission of Texas acted beyond its delegated powers in finding that public convenience and necessity exist for Red Arrow's authorization to engage in operations in interstate and foreign commerce within geographic limits which do not exceed the scope of its authorized intrastate operations. We affirm the judgment of the trial court.

On May 4, 1971, after an extensive hearing, the Railroad Commission granted to Red Arrow certain intrastate operating authority as a motor common carrier over a system of regular routes in East Texas. Southern Pacific's and Southwestern's chief attack upon the Railroad Commission's order is that it included a finding concerning public convenience and necessity not only as to intrastate operations, but also as to interstate and foreign commerce.

The Interstate Commerce Commission, acting upon the finding of the Texas Railroad Commission, granted a certificate of registration to Red Arrow which authorized its operation in interstate commerce. The basis for the Interstate Commerce Commission's grant of interstate authority is found in Section 206(a)(6) of the Interstate Commerce Act, 49 U.S.C.A., Sec. 306(a)(6), the pertinent part of which is:

On and after October 15, 1962 no certificate of public convenience and necessity under this chapter shall be required for operations in interstate or foreign commerce by a common carrier by motor vehicle operating solely within a single State and not controlled by, controlling, or under a common control with any carrier engaged in operations outside such State, if such carrier has obtained from the commission of such State authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce and such certificate recites that it was issued after notice to interested persons through publication in the Federal Register of the filing of the application and of the desire of the appli-

cant also to engage in transportation in interstate and foreign commerce within the limits of the intrastate authority granted, that reasonable opportunity was afforded interested persons to be heard, that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intrastate operations authorized to be conducted. Such operations in interstate and foreign commerce shall, however, be subject to all other applicable requirements of this Act and the regulations prescribed hereunder . . . .

Southern Pacific and Southwestern, in addition to this appeal from the Railroad Commission's order, instituted suit in the U. S. District Court for the Northern District of Texas seeking to nullify and enjoin the action of the Interstate Commerce Commission. That court sustained the action of the Interstate Commerce Commission in an opinion which reviewed the history and purposes served by Section 306(a)(6) which was enacted in 1962. Prior to that time, a single-state motor carrier could obtain a certificate for interstate operations by merely registering its intrastate certificate with the Interstate Commerce Commission. The U. S. Congress, after a study of the abuses springing from that practice, determined that certificates for interstate operations should be issued only upon compliance with more stringent rules and upon a finding of public convenience and necessity made by the state regulatory body. The quoted section delegated to the state commission the authority to make such a finding as an incident to the hearing for intrastate certification. The U. S. District Court denied all relief sought by Southern Pacific and Southwestern, holding that there is no constitutional prohibition against federal and state coordination

of their regulation of commerce. See Prudential Insurance Co. v. Benjamin, 328 U. S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).

Southern Pacific and Southwestern by this action, urge that the Texas Legislature has not delegated the power to the Railroad Commission to conduct hearings and make a finding concerning interstate commerce. It is our opinion that there is such a delegation of power. The Texas Motor Carrier Act grants broad regulatory powers to the Railroad Commission. Section 4 of Article 911b, Vern.Tex.Civ. Stats., provides:

"(a) *The Commission is hereby vested with power and authority and it is hereby made its duty to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in this State,* to fix, prescribe or approve the maximum or minimum or maximum and minimum rates, fares and charges of each motor carrier in accordance with specific provisions herein contained, to prescribe all rules and regulations necessary for the government of motor carriers, to prescribe rules and regulations for safety of operations of each of such motor carriers, to require the filing of such monthly, annual or other reports and other data of motor carriers as the Commission may deem necessary, to prescribe the schedules and services of motor carriers operating as common carriers, *and to supervise and regulate motor carriers in all matters affecting the relationship between such carriers and the shipping public whether herein specifically mentioned or not.*

" . . .

"(c) The Commission is further authorized and empowered, and it shall be its duty, to supervise and regulate motor carriers in *all* matters affecting the relationship between such motor carriers and the shipping public that may be necessary in the interest of the public.

"(d) *The Commission is further authorized and empowered, and it shall be its duty, to supervise and regulate motor carriers in all matters whether specifically mentioned herein or not so as to carefully preserve, foster and regulate transportation* and to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interests of the public." (Emphasis added)

■ The wide grant of powers to the Railroad Commission has long been held to include the policing of interstate carriers as well as intrastate carriers to the extent that public safety is protected and the Texas highways require protection. Thompson v. McDonald, 5 Cir., 95 F.2d 937, aff'd, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1939); Railroad Commission of Texas v. Southwestern Greyhound Lines, 128 Tex. 560, 99 S.W.2d 263 (1936). The cases upon which appellants rely are those which hold that an administrative agency lacked regulatory power beyond the point of a conflict with federal power. That is not our present problem, and for this reason we do not consider these cases controlling: Railroad Commission of Texas v. Querner, 150 Tex. 490, 242 S.W.2d 166 (1951); Railroad Commission of Texas v. Southwestern Greyhound Lines, *supra*; Smith v. Wald Transfer & Storage Co., 97 S.W.2d 991, 993 (Tex.Civ.App.1926, writ dism'd); Texport Carrier Corp. v. Smith, 8 F.Supp. 28 (S.D.Tex.1934); Galveston Truck Line Corp. v. Allen, 2 F.Supp. 488 (S.D.Tex. 1933); Sage v. Baldwin, 55 F.2d 968 (N. D.Tex.1932); Hi-Ball Transit Co. v. Railroad Commission, 27 F.2d 425 (N.D.Tex. 1928).

Our decision in Southwestern Greyhound Lines, *supra*, was that a state regulatory agency could not displace the constitutional power of Congress to regulate interstate commerce and that federal legislation supersedes all state regulation "in conflict therewith." Our discussion in that case concerned the presence of a conflict between state and federal regulatory powers. We resolved that question in these words:

That the federal law does not displace entirely the state laws upon this subject is too plain for argument. It is only where there is an actual and distinct conflict between the laws that the state law will be displaced, and then only as to that part of the state law in actual conflict with the federal law . . . .. That it was the purpose of the federal law to co-operate with the states in the administration of that law is plainly set forth in its provisions.

Our discussion in Southwestern Greyhound Lines, *supra*, concerned the absence of state powers in the presence of federal law which conflicted with state law, but it was not a holding that Section 4, Article 911b, failed as a grant of power to the Railroad Commission in the absence of such a conflict. In the present case, we do not have a conflict between the federal and state regulatory laws. Congress by its enactment of Section 306(a)(6) of the Interstate Commerce Act, withdrew the Interstate Commerce Commission and its regulatory powers from the field of possible conflict in a limited area and invited the cooperation of state agencies. It resolved those possible conflicts between state and federal agencies by removing an obstacle to cooperation between the two. Under its provisions, a state agency which necessarily hears the evidence relating not only to intrastate commerce but also connecting interstate commerce, may make a finding concerning both. The Interstate Commerce Commission, not the Railroad Commission, must actually grant or deny a certificate of registration for operations in interstate or foreign commerce, and the finding of the Railroad Commission is subject to review by the Interstate Commerce Commission.

■ Southern Pacific and Southwestern assert by another point that the trial court erred in substituting its judgment for that

of the administrative agency. Prior to the hearing before the Railroad Commission, Red Arrow gave no notice that it proposed to use alternate routes over portions of state highways 52, 135 and 155. The trial court set aside the Railroad Commission's order insofar as it authorized Red Arrow's operations over segments of those highways, but it approved the remaining portions of the order. The argument is that Red Arrow's use of those additional routes is necessary to sustain the Railroad Commission's conclusion that the operations will be an economic operation. The record does not support that contention.

It is our opinion that the trial court on review of an administrative order may, in an appropriate case, set aside an order in part and affirm an order in part. Railroad Commission of Texas v. Curry Motor Freight Lines, Inc., 392 S.W.2d 186 (Tex. Civ.App.1965, writ ref'd n. r. e.); Railroad Commission v. National Transport Corporation, 363 S.W.2d 360 (Tex.Civ. App.1963, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.