Public Utilities Commission
No. 7755

AUCLAIR TRANSPORTATION, INC. & a.

v.

ROSS EXPRESS, INC.

July 25, 1977

*Sheehan, Phinney, Bass & Green,* of Manchester and *Warren B. Rudman; Richardson & Tyler* and *James E. Mahoney* of Massachusetts; *Barrett & Barrett* and *John F. O'Donnell* of Massachusetts, and *Frank J. Weiner,* of Massachusetts (*Mr. Rudman* and *Mr. Mahoney* orally), for the plaintiffs.

*McLane, Graf, Greene, Raulerson & Middleton,* of Manchester, and *Charles A. DeGrandpre* and *Grenville Clark, III* (*Mr. De-Grandpre* orally), for the defendant.

*David H. Souter,* attorney general, and *Deborah J. Cooper,* attorney (*Mrs. Cooper* orally), for the New Hampshire Public Utilities Commission.

KENISON, C.J. The defendant filed an application with the New Hampshire Public Utilities Commission (PUC) on June 6, 1976, for a certificate of public convenience and necessity to operate as a common carrier of property by motor vehicle between points in New Hampshire. Although the defendant had previously obtained such a certificate authorizing its intrastate operations, this application was made for the purpose of obtaining authority to transport interstate and foreign goods between points in New Hampshire.

The defendant applied for this authority under section 206(a)(6) of the Interstate Commerce Act, 49 U.S.C.A. 306(a)(6) (1963), which provides an exception to the general rule that common carriers engaged in interstate commerce must obtain a certificate of public convenience and necessity from the Interstate Commerce Commission. *Murfreesboro Freight Lines Co., Inc. v. United States,* 357 F. Supp. 336 (M.D. Tenn. 1973). This section permits the carrier to obtain from the state commission

authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle com-

mon carrier operations in intrastate commerce . . . . [S]uch certificate [must recite] that it was issued after notice to interested persons through publication in the Federal Register . . . , that reasonable opportunity was afforded interested persons to be heard, that the State commission has duly considered the question of the proposed interstate and foreign operations and has found that public convenience and necessity require that the carrier authorized to engage in intrastate operations also be authorized to engage in operations in interstate and foreign commerce within limits which do not exceed the scope of the intrastate operations authorized to be conducted."
49 U.S.C.A. 306 (a) (6) (1963); *Ray Price, Inc. v. United States,* 297 F. Supp. 55 (D. Neb. 1969).

Thus, this is not a case in which the PUC's actions were unauthorized under federal law. *E.g., Auclair Transp., Inc. v. State,* 113 N.H. 231, 305 A.2d 662 (1973).

After publication in the Federal Register, and after a four-day proceeding at which interested parties were heard, the PUC made certain findings of fact and granted the defendant's application. The plaintiffs' motion for rehearing, RSA 541:3, was denied. The named plaintiff withdrew; the others appealed to this court. RSA 541:6.

■ The plaintiffs' first argument relates to the fact that the commission failed to notify them of its decision and then modified the language of the order without giving the plaintiffs an opportunity to be heard. This objection was not raised in the motion for rehearing and thus we will not consider it here, RSA 541:4; *Browning-Ferris Indus. v. State,* 115 N.H. 190, 339 A.2d 1 (1975), except to say that the changes in the order were pro forma only, made for the purpose of complying exactly with the federal requirements, and did not affect the substantive rights of the parties or prejudice the plaintiffs. 2 F. Cooper, State Administrative Law 598, 706 (1965).

In their second argument, the plaintiffs contend that the New Hampshire Legislature did not authorize the PUC to exercise the power conferred on it by section 206 (a) (6) of the Interstate Commerce Act. No provision of RSA ch. 375-B expressly states that the PUC may grant section 206 (a) (6) certificates. We thus look to what powers may be fairly implied from the statutory lan-

guage taken as a whole. *Petition of Boston & Maine R.R.*, 82 N.H. 116, 129 A. 880 (1925); 3 J. Sutherland, Statutes and Statutory Construction § 65.02 (4th ed. C. Sands 1975).

RSA ch. 375-B (Supp. 1975) grants broad powers to the PUC to regulate the trucking industry for the purposes of ensuring the safe use of our highways, promoting the convenience of shippers and receivers of freight, and serving the best interests of the general public. RSA 375-B:1 (Supp. 1975). "No person shall engage in the business of operating as a common or contract carrier . . . unless he holds a certificate or permit issued by the commission. . . ." RSA 375-B:4 (Supp. 1975). "[T]he commission may establish reasonable requirements and regulations with respect to reasonable and adequate service, and safety of operation and equipment." RSA 375-B:17 (Supp. 1975). It may also "administer, execute, and enforce all other provisions" of the statute and "make all necessary orders in connection therewith, and . . . prescribe rules, regulations, and procedure for such administration." *Id.* Finally, and perhaps most importantly in this case, one of the powers and duties of the commission is "[t]o make cooperative agreements with the Interstate Commerce Commission for the enforcement of the economic and safety laws and regulations concerning highway transportation pursuant to the provisions of Part II of the Interstate Commerce Act, as amended" which includes section 206(a)(6). *Id.*

Two other state supreme courts have considered arguments identical to those which the plaintiffs raise here. *Central Motor Express, Inc. v. Fowler*, 220 Tenn. 507, 419 S.W.2d 170 (1967); *Southern Pacific Transport Co. v. Railroad Comm'n*, 493 S.W.2d 502 (Tex. 1973). Both courts cited from their state enabling statutes certain language similar to that quoted above and held that such language was sufficient to authorize their commissions to exercise the powers conferred upon them by section 206(a)(6). A third state supreme court summarily disposed of the same challenge to the commission's authority by simply citing the state enabling statute and the cases thereunder. *Whitfield Transp., Inc. v. New Mexico State Corp. Comm'n*, 85 N.M. 632, 515 P.2d 557 (1973). That statute is nearly identical to our own. *Compare* N.M. Stat. Ann. § 64-27-8 *with* RSA ch. 375-B (Supp. 1975).

Rather than decide this issue on the basis of the statutory language alone, we will go on to consider the legislative history of the act. *State v. Amato*, 115 N.H. 639, 348 A.2d 339 (1975); *Plymouth*

*School Dist. v. State Bd. of Educ.*, 112 N.H. 74, 289 A.2d 73 (1972). The sponsor of the statute testified before the house committee on transportation that the purpose of the legislation was to coordinate state regulation of common carriers with Interstate Commerce Commission regulation. *Minutes of Hearings on H.B. 448 Before the House Comm. on Transportation*, N.H.H.R., 1967 Sess. (April 23, 1967). Other testimony contains several references to section 206 (a) (6) and proclaims the desirability of establishing a procedure to allow local motor carriers to qualify thereunder. *Id.* Minutes of hearings before the senate public works committee also make clear that RSA ch. 375-B (Supp. 1975) was designed to promote local control over common carriers and increase cooperation with the Interstate Commerce Commission. *Minutes of Hearings on H.B. 448 Before the Senate Comm. on Public Works*, N.H.S., 1967 Sess. (June 23, 1967).

■ Based upon the statutory language and the legislative history of RSA ch. 375-B (Supp. 1975), we conclude that the PUC acted within its scope of authority in granting the defendant's application. Our holding is further supported by the fact, brought out at the PUC hearing, that at the time the defendant applied for its section 206(a) (6) certificate all states except New Hampshire and Rhode Island had operating within them one or more common carriers holding section 206(a) (6) certificates issued by local authorities.

■■ The plaintiffs' third argument is that the PUC's findings are unjust and unreasonable in that (1) much of the evidence presented was hearsay and (2) the findings are not supported by the evidence. With respect to the first objection, administrative tribunals are not bound by the strict rules of evidence, including the rules against the admission of hearsay. *New Hampshire Milk Dealers' Ass'n v. New Hampshire Milk Control Bd.*, 107 N.H. 335, 340, 222 A.2d 194, 199 (1966); F. Welch, Public Utility Regulation 639 (1968); *see* 2 K. Davis, Administrative Law Treatise § 14.01 (1958 and Supp. 1970). With respect to the sufficiency of the evidence, the law is clear that the commission's findings are deemed prima facie lawful and reasonable. RSA 541:13; *Manchester v. Boston & Maine R.R.*, 98 N.H. 52, 94 A.2d 552 (1953). "The test, therefore, as to findings of fact is not whether on the evidence this court or some other tribunal would have reached a different result, or whether the Board could have reached an opposite re-

sult, but rather whether taking the evidence as a whole the Board could reasonably have found as it did." *New Hampshire Milk Dealers' Ass'n v. New Hampshire Milk Control Bd.*, 107 N.H. at 342, 222 A.2d at 200; *see* 4 K. Davis, *supra* § 29.05.

In accordance with the requirements of section 206(a)(6), the commission "found that the public convenience and necessity require that the applicant be authorized to engage in intrastate operations and also be authorized to engage in interstate and foreign commerce within limits that do not exceed the scope of the intrastate operations authorized to be conducted." The record here is voluminous and contains testimony from shippers and receivers both in and out of state as to the superiority of the defendant's operations, the dissatisfaction with present services, and the need in general for the services that the defendant seeks authority to provide. We have carefully examined those portions of the record cited by the parties in support of their respective positions and conclude that, although some testimony and exhibits are somewhat dubious, the evidence adequately sustains the commission's findings. *Whitfield Transp., Inc. v. New Mexico St. Corp. Comm'n*, 85 N.M. at 633, 515 P.2d at 558.

*Plaintiffs' exceptions overruled.*

All concurred.