Public Employee Labor Relations Board
No. 92-225

## APPEAL OF CITY OF PORTSMOUTH, BOARD OF FIRE COMMISSIONERS

### (New Hampshire Public Employee Labor Relations Board)

August 25, 1993

*Thomas E. Cayten,* of Portsmouth, by brief and orally, for the petitioner.

*Cook & Molan, P.A.,* of Concord (*Shawn J. Sullivan* on the brief and orally), for the respondent.

BATCHELDER, J.  The petitioner, the board of fire commissioners of the City of Portsmouth (the fire commission), appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB), supporting the complaint of the respondent, Portsmouth Firefighters, Local 1313 (the union), that a fire commissioner's comments reported in a local newspaper were an unfair labor practice in violation of RSA 273-A:5, I(a), (b), (e), and (g) (1987). The fire commission argues that the comments of a single commissioner did not constitute an act of "the public employer"; that a letter addressed directly to members of the union was improperly admitted as substantive evidence; that the comments were an exercise of free speech protected by both the State and Federal Constitutions; and that the PELRB's order directing the fire commission to cease and desist from commenting on or criticizing the union leadership is an unwarranted prior restraint on the exercise of free speech. Because the admission of the letter as substantive evidence was improper and prejudicial, we reverse and remand without reaching the last two issues.

On May 15, 1991, at a public meeting of the fire commission, a member of the union provided to the press an alcoholic rehabilitation agreement between the Portsmouth Fire Department and another union member. The union's executive board authorized the release of the agreement to the press in retaliation for the member's criticism of the union for failing to help him after he was suspended for losing his driver's license.

Later that evening, a newspaper reporter contacted Sheila Loch, one of the fire commissioners, at her home and asked her to comment on the release of the agreement. When she asked the reporter for his or her source of the copy of the agreement, she was told that someone in a firefighter's uniform had supplied it. The reporter implied that it had come from a union member. Loch responded that what the union had done was reprehensible. In addition, she made negative

comments about the union and its leadership. The following day, Loch's comments appeared in *Foster's Daily Democrat* in an article entitled, "Commissioners slam union for releasing part of personnel file." This article, which is the basis of the union's unfair labor practice complaint, contained the following:

> "Commissioner Sheila Loch said she was furious about what happened. 'Everyone has the right to expect their [*sic*] privacy respected. . . . As a human being it concerns me that a person would belong to the kind of group that would do something like that.'
>
> 'To me it's low. It's below classless.'
>
> . . .
>
> Ms. Loch said she believes the union has been led astray by its leadership. 'I am not sure they have done themselves a favor in who they have representing them. I question whether they have chosen the best they could.'
>
> She said she believes there are a number of individuals in the union who are able to compromise and view matters with common sense. 'I don't think these people are in the leadership,' adding she believes the union leadership hurt members during recent contract negotiations."

The union filed improper practice charges with the PELRB. Following a hearing, the PELRB ruled that the fire commission had committed unfair labor practices in violation of RSA 273-A:5, I(a), (b), and (e). The fire commission's motion for rehearing was denied. This appeal followed.

The findings of the PELRB "are deemed *prima facie* lawful and reasonable." *Appeal of Town of Pelham*, 124 N.H. 131, 135, 469 A.2d 1295, 1297 (1983). In the absence of an error of law, this court will not overturn a ruling of the PELRB unless we find that it abused its discretion. *Appeal of AFL-CIO Local 298*, 121 N.H. 944, 947, 437 A.2d 260, 262 (1981).

The fire commission argues that the comments of a single commissioner that have not been ratified or approved by the fire commission do not constitute the act of a "public employer" and, thus, cannot violate RSA 273-A:5, I. The union counters that Loch's comments to the press were made in the context of her role as a commission member.

RSA 273-A:1, X (1987) defines "public employer" as "the state and any political subdivision thereof, any quasi-public corporation, coun-

cil, *commission*, agency or authority, and the state university system." (Emphasis added.) Consequently, in order to violate the proscriptions of RSA chapter 273-A, the objectionable comments must have been made by the fire commission, rather than by Loch as an individual.

The line between observations by a public official in conversation in private life and the same observations expressed in an official capacity, implicitly carrying with them the perception that the speaker is voicing the views and concerns of a public entity, is difficult to draw. The conclusion as to where the line must be drawn is driven by the facts of the case. It is difficult to imagine many instances where an inquiry by the press would prompt anything other than an official response, short of an explicit disclaimer that the comments were not made in an official capacity or "off the record" statements solicited as such without attribution as to source.

The PELRB decision that the fire commission cites to support its argument that Loch was speaking as a private citizen requires the opposite conclusion. In *Salem Brotherhood of Firefighters, Local 2892, IAFF v. Town of Salem and Joseph Gagnon*, Decision No. 92–09 (PELRB Jan. 22, 1992), a selectman made uncomplimentary comments on a cable television program about the Salem firefighters. A disclaimer at the beginning and the end of the program specified that the views expressed were not necessarily those of the Town of Salem. The PELRB determined that the selectman was acting as an individual when he made the comments and, therefore, found no unfair labor practice. The PELRB noted, however, that the selectman "walked up to the line but he did not cross it. Had he utilized information only available to him in his capacity as a negotiator or been speaking on behalf of the Board of Selectmen," his comments would have been impermissible conduct. This is precisely what happened here. Loch commented that the union leadership hurt the membership during recent contract negotiations. This information was not available to a member of the public not privy to the contract negotiations. Accordingly, the evidence supports the PELRB's finding that Loch's comments were made in her capacity as a fire commissioner.

Notwithstanding our determination that Loch was acting as a fire commissioner when she commented to the press, the fire commission maintains that her comments were not made by the "public employer," *i.e.*, the fire commission, because they were nei-

ther authorized nor ratified by a majority vote of the fire commission. In so arguing, however, the fire commission overlooks the general principles of agency law. A public employer will be responsible for its agent's acts when the employees would have just cause to believe that the agent was acting for and on behalf of the public employer. *Cf. Belleau v. Hopewell*, 120 N.H. 46, 51, 411 A.2d 456, 459 (1980). Here, where Loch's comments were specifically identified as those of a fire commissioner, she had apparent authority to act for the fire commission. It follows, therefore, that union members would view her comments as coming from the fire commission. Further, to assert that a public employer can insulate itself from the proscriptions of RSA chapter 273-A by always acting as individuals, rather than as a unified body, contravenes "the policy of the state to foster harmonious and cooperative relations between public employers and their employees." Laws 1975, 490:1. We therefore reject the fire commission's assertion.

The fire commission next argues that the only issue before the PELRB was Loch's comments as reported in *Foster's Daily Democrat* and, consequently, that a letter signed by Loch, seeking meetings with individual union members, should not have been admitted as substantive evidence and should not have been the basis for the PELRB's decision. We agree.

At the hearing before the PELRB, the union sought to introduce into evidence a letter signed by Loch and one other fire commission member, addressed to the individual members of the union, asking them to meet in small groups with the fire commission. This letter was sent to the union members at their homes after the union president had declined the fire commission's request to meet to discuss ongoing problems at the station. The union argued that the letter was relevant to show "a pattern of [Loch's] attempts at circumventing and undermining the Union leadership." The PELRB allowed the evidence to come in for "background," but cautioned that

> "[t]he one issue before this board today is whether or not one member of the Fire Commission by actions either verbally or in print or otherwise constituted an unfair labor practice charge and that is all we really want to hear. . . . Bare [*sic*] in mind, however, that the one issue is as previously stated. The decision of the board will be based on that one issue and one issue alone."

The PELRB, however, failed to follow its own announced procedure in this case. Edward Haseltine, chairman of the PELRB, be-

gan the hearing by clarifying that "the only issue . . . [is] about this one individual speaking out." When the union attempted to use the letter as evidence that "the Fire Commission tried to circumvent the union leadership," the fire commission objected, maintaining, "That's not part of the charge." Chairman Haseltine agreed, stating, "That's right. It's not part of the charge and the record stands on it [*sic*] own."

Despite these rulings, the PELRB relied on the letter as a substantive basis for sustaining the unfair labor practice complaint. After quoting the entire text of the letter, the PELRB noted that it was "evidence of a course of conduct by which representatives of the employer attempted to circumvent the Union Executive Board by communicating directly with the membership in their capacity as the 'employer' and by appealing for independent action." After noting "the employer's obligation to deal with the certified bargaining representative and the impropriety of any attempts to circumvent that obligation by attempting to deal directly with the membership," the PELRB questioned "the impact this course of conduct might be expected to have on a union member who . . . had been solicited to come to meetings 'in small group settings' after that overture had been presented to, voted on, and rejected by the membership."

Although the strict rules of evidence do not apply to administrative hearings, *see Auclair Transp., Inc. v. Ross Express, Inc.*, 117 N.H. 630, 634, 376 A.2d 146, 148–49 (1977), where, as here, the PELRB announced that the letter would be admitted for background information only, it was error to rely on it substantively as evidence of a course of conduct amounting to an unfair labor practice. However, we will not set aside the PELRB's decision unless the error materially prejudiced the fire commission. *Attitash Mt. Service Co. v. Schuck*, 135 N.H. 427, 430, 605 A.2d 1067, 1070 (1992).

■ Nothing in the PELRB decision identifies Loch's comments, standing alone, as an unfair labor practice. Rather, the PELRB based its decision on "the entire course of conduct presented for our consideration from March 14, 1991 [when the union president declined the fire commission's invitation to meet with the union regarding problems at the station] to the date of [Loch's comments]." Consequently, we cannot determine whether the PELRB would have reached the same decision had it not improperly relied on the letter substantively as evidence of an unfair labor practice.

Because we hold that the fire commission was materially prejudiced by the PELRB's error, we reverse and remand. Consequently, we do not reach the fire commission's additional arguments.

*Reversed and remanded.*

All concurred.